## INDEMNITY INSURANCE CO. OF NORTH AMERICA v. SANDERS.

No. 22310.   Oct. 2, 1934.

Rehearing Denied Oct. 23, 1934.

Ellis A. Robinson and Quincy J. Jones (R. D. Hudson and W. E. Hudson, on briefs), for plaintiff in error.

Ford & Montgomery (Leslie W. Lisle, of counsel), for defendant in error.

CULLISON, V. C. J. This is a proceeding by garnishment in aid of execution seeking to recover the amount of a judgment rendered in the district court in favor of plaintiff.

The record discloses that Adah C. Sanders, as plaintiff, filed suit against W. J. Supernaw, Mrs. W. J. Supernaw, Herbert Walker, and Joe H. Brown, seeking to recover judgment for personal injuries alleged to have been sustained in an automobile accident, caused by the collision of a car, owned by Supernaw, with a car in which plaintiff was riding.

Upon the trial of said cause plaintiff dismissed her action as to defendants W. J. Supernaw and Mrs. W. J. Supernaw, and proceeded through the trial of said cause against the defendants Herbert Walker and Joe H. Brown, and recovered judgment against defendants in the amount of $2,500.

An execution was issued on said judgment against defendants Walker and Brown, served by the sheriff of Tulsa county, Okla., and returned showing no property found. Thereafter, plaintiff procured the issuance of garnishee summons against the Indemnity Insurance Company of North America, as garnishee, requiring said company to answer whether it was indebted or had in its possession or control any property belonging to said defendants.

The garnishee filed an answer in which it denied it had any money, goods, credits, or property in its possession belonging to either Walker or Brown, and neither was it indebted to either of said parties.

Plaintiff elected to take issue with said garnishee on its answer, and upon the issues so framed said cause was tried to determine whether or not the Indemnity Insurance Company of North America, garnishee herein, had any property belonging to, or was in any wise indebted to, defendants Brown or Walker.

At the conclusion of said trial the court directed the jury to return a verdict in favor of plaintiff for the amount of said judgment previously rendered, and from said judgment of the trial court the insurance company appeals to this court.

The determination of this appeal depends upon the construction of the insurance contract under consideration.

The record discloses that W. J. Supernaw was the owner of a Pierce-Arrow automobile on which he procured an insurance contract from the Indemnity Company of North America covering his liability on said automobile.

Said policy contains the following provision in regard to additional assureds:

"It is hereby understood and agreed, unless limited by indorsement attached hereto, that this policy is extended to cover as additional assured any person or persons while

riding in or legally operating any automobile described in the declarations and any person, firm or corporation, legally responsible for the operation thereof, * * * provided such use or operation is with the permission of the named assured, or, if the named assured is an individual, with the permission of an adult member of the assured's household other than a chauffeur or domestic servant. * * * "

The record further discloses that Herbert Walker was a son-in-law of W. J. Supernaw: that Walker and his wife had been at the home of Supernaw for a short time prior to the date of the accident in question, to wit, April 17, 1928. On the morning of April 16, 1928, Supernaw and Walker drove the Pierce-Arrow automobile from Supernaw's home in Skiatook, Okla., to Supernaw's farm near Skiatook, where Supernaw was doing certain work. Shortly after arriving at the farm, Walker informed Supernaw that he had an engagement to meet a certain party at the First National Bank at Skiatook, and that he would drive the car into Skiatook and return immediately thereafter to the farm. Supernaw gave his permission to Walker to drive the car to Skiatook on said supposed business errand. Walker did not return to the farm during the day of April 16, 1928, to get Supernaw, neither did he return to the home in Skiatook, and was not heard of until in the afternoon of April 17, 1928, when Walker, Joe Brown and two other parties who were riding in said car had a collision with another car on the streets of Tulsa, Okla. At the time of the collision Joe Brown was driving Supernaw's car. Walker was riding therein.

Under the provisions of the policy quoted, supra, it is provided:

"* * * That this policy is extended to cover as additional assured any person or persons while riding in or legally operating any automobile described in the declarations and any person * * * legally responsible for the operation thereof, * * * provided such use or operation is with the permission of the named assured, or, if the named assured is an individual, with the permission of an adult member of the assured's household. * * *"

It is contended that Walker was a member of the assured's household, and that he being a member of the assured's household, could give permission to Brown to operate said car, and that the operation thereof would come under the additional assured's clause in said insurance policy.

It therefore becomes necessary to determine what is the real meaning of the word "household," so as to determine whether or not Walker was a member of Supernaw's household.

Webster's New International Dictionary defines "household" as follows: "Those who dwell under the same roof and compose a family; a domestic establishment; family."

The Supreme Court of the United States, in the case of Arthur v. Morgan, 28 L. Ed. 825, at page 827, says:

"Persons who dwell together as a family constitute a household."

In the case of Pearre v. Smith (Md. 1909) 73 Atl. 141, we find the following definition:

"A 'family' is a collective body of persons living in one house, and under one manager. It consists of those who live with the pater familias. The word is often used interchangeably with 'household.'"

In applying the definitions just set out to the facts in the case at bar, we observe that the testimony shows that Walker had married the daughter of J. W. Supernaw and that they possessed a home under their control in which they had their personal effects.

A few days before the date of this accident Walker became intoxicated and was away for some time, and his wife left their home and went to the home of her father, Supernaw, and upon Walker's becoming sober he came to the home of Supernaw, where he was attempting reconciliation with his wife and for that reason only called at said home a few days prior to the date of the accident.

Under such circumstances we observe that Walker was the head of his own household or family, consisting of himself and his wife; that when he married the daughter of Supernaw, she then ceased to be a member of the household or family of Supernaw, but became a member of Walker's household. And the fact that she was temporarily spending a few days at the home of her parents, Walker, did not constitute her and her husband, Walker, members of the family of Supernaw, or members of his household.

There was no liability to support Walker or Mrs. Walker incumbent upon Supernaw. Walker and Mrs. Walker owed no duty to abide the authority of Supernaw. And under the authorities heretofore cited, we can find no authority to hold that Walker was a member of the household of Supernaw so as to constitute him a member of the household of W. J. Supernaw within the provisions of the insurance policy.

We will now consider the question whether

or not either Walker or Brown had permission to use and operate said car at the time of the accident so as to bring either of said parties within the provisions of the insurance policy.

We have previously outlined the means and method whereby Walker procured possession of and permission to operate said car and to drive the same upon an errand from the farm of Supernaw to Skiatook, Okla.

In this connection we further observe that the request of Walker to drive said car was that he, Walker, be permitted to drive the same in order to fulfill a business appointment, and that he would immediately thereafter return to the farm of J. W. Supernaw.

He procured permission from Supernaw to do one specific thing, to wit, drive the car on a certain mission. It therefore depends upon whether or not Walker was upon said mission or going to or from the transaction of said business at the time of the accident.

If he was going to or from the transaction of said business for which he had permission, then liability would surely exist, but if he had departed upon a mission of his own, entirely apart from which he had permission to use said car, then an entirely different question is presented for consideration.

In the case of Cypert et ux. v. Roberts et al. (Wash. 1932) 13 P. (2d) 55, the Supreme Court of Washington had under consideration almost the identical question here under consideration, and in construing said additional assureds clause held as shown in the body of the opinion, at page 56, as follows:

"In order that the 'additional assured' part of the insurance contract should be operative, it was necessary, according to its terms, that the operator of the car have permission of the named assured to use or operate the car. * * * The issue is whether Miss Roberts had the permission of Nalley's, Inc., to use the car as and when the collision occurred. That she did not have such permission, express or implied, to use the car at the place, at the time, and under the circumstances, or for purposes existing at the time of the collision, was clearly established and must be so held and declared as a matter of law."

The question of whether the person had authority or permission to operate the car "must be deemed to refer to the operation of the car at the time the liability, if any, arose." Sauriolle v. O'Gorman et al. (N. H.) 163 A. 717.

Do the facts in the case at bar bring it within the rule quoted supra, and show that Brown or Walker had express or implied authority to operate said car at the time of the accident? Permission by Supernaw to Walker to drive the car from the farm to Skiatook and return on Monday morning could not be extended by Walker to extend to and include the driving of the car by Brown in Tulsa on Tuesday afternoon at the time of the accident. There was no permission such as to bind the insurance company under the terms of the insurance policy.

The judgment of the trial court is reversed.

RILEY, C. J., and OSBORN, BAYLESS, and WELCH, JJ., concur.