**EMPLOYERS CASUALTY CO. v. WILLIAMSON.**

No. 3974.

United States Court of Appeals Tenth Circuit.

Jan. 3, 1950.

Rehearing Denied Jan. 28, 1950.

James C. Cheek, Oklahoma City, Okl., for appellant.

James E. Grigsby, Oklahoma City, Okl., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The appellant, the Employers Casualty Company, issued its standard policy of insurance to D. L. Kelly and F. A. Kerran, a partnership, doing business as the Double Eagle Refining Company of Oklahoma City. The policy insured a truck used by the partnership in their business. In addition to the named insured, it also defined an insured as any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile *is with the permission of the named insured*. Subsequent to the issuance of the policy, Paul Kelly became a member of the partnership. On August 6, 1946, one Jesse Yarsant obtained possession of the insured truck and was using it when an accident resulted. An action was filed against Yar-

sant in the District Court of Oklahoma County, Oklahoma, on account thereof, and a judgment was obtained against him in the sum of $5500.00. Thereafter, the plaintiff in that case instituted this action against the insurance company to recover the amount of judgment under its policy of insurance. Trial was had to the court. The trial court held that Yarsant was an insured within the meaning of the policy and entered judgment against the company for the amount of judgment rendered against Yarsant.

The question of liability depends upon whether Yarsant was an insured within the definition of the policy as outlined above at the time of the accident, and that in turn depends upon whether he was using the truck at the time of the accident with the permission and consent of the partnership, or one of them, so as to bind the partnership.

D. L. Kelly, at the time of the accident, was an inactive partner in the management and operation of the partnership business. He had obtained the truck for the purpose of having dirt hauled for him. Yarsant was one of two persons employed in that operation. While he was hauling dirt for Kelly, a Mr. Weldon saw Yarsant and asked him if he would haul fifty to seventy-five loads of dirt for him. He agreed to pay $8.00 per load. Yarsant testified that he asked D. L. Kelly for permission to use the truck for such purposes and agreed that the $8.00 should be divided between him and the partnership. He testified that D. L. Kelly told him it was all right to use the truck but for him to obtain the permission of the remaining two partners; that on Saturday morning he called D. L. Kelly and asked him whether it was all right to use the truck and was told to call the two partners and obtain permission from them, but that he told D. L. Kelly that he did not know them and asked him to call them. He testified that Kelly agreed to do this and that thereafter he called D. L. Kelly and was told that it was all right to use the truck. He, thereupon, got the truck at the refinery, got the keys from the bookkeeper, filled the tank with gas at the partnership tank, and proceeded

to Weldon's place. He found him away from home. While on the way to the partnership's place of business to return the truck, he met a woman who asked him to haul dirt for her, and also to obtain for her a second-hand water heater. He agreed to haul dirt for her at the rate of $6.00 a load. This sum was likewise to be divided between him and the partnership. He also agreed to obtain the water heater. While on the way to a junk yard to obtain the heater, the accident occurred out of which liability arose. D. L. Kelly denied that he told Yarsant that it was all right for him to use the truck. Paul Kelly and Kerran likewise testified that they never gave their permission to use the truck.

There is a clear conflict in the evidence as given by Yarsant and that as given by the three partners. The court resolved the conflict against the partnership and believed the evidence of Yarsant. It cannot be said that his testimony had no probative value or that the court erred, as a matter of law, in believing it rather than the testimony of the three partners. There were also some corroborating circumstances which would indicate that it was understood that Yarsant had the right to use the truck. Thus, he came into the office and inquired where the truck was and asked about the keys and the bookkeeper gave him the keys. He also asked about getting gasoline and drove up to the partnership tank and filled the truck with gasoline. It is difficult to believe that the keys would have been voluntarily surrendered to a stranger without some understanding, and that he would have been permitted to fill the truck with gasoline from the partnership gas tank and drive away with the truck.

We, accordingly, conclude that the court's finding and conclusion that Yarsant obtained the possession of the truck with the consent of the partnership is supported by the record. But this does not dispose of the case. The precise question is was Yarsant at the time of the accident using the truck for the purposes for which permission was granted. His right to use the truck was a limited one. His request to D. L. Kelly was to use the truck to haul dirt for Weldon under an arrangement by which he and the partnership shared equally in the proceeds therefrom. He did not have permission to do general hauling. He realized this for when Weldon was not home, he started to return the truck to the place where he obtained it. It was while he was doing this that he entered into an arrangement with a woman to haul dirt for her and also to haul a water heater for her.

In Lloyds America v. Tinkelpaugh, 184 Okl. 413, 88 P.2d 356, the Oklahoma Supreme Court discusses the three rules under the usual omnibus clause as to the extent of deviation from granted permission to use the insured vehicle necessary to prevent the user from becoming an additional insured under such clause. These rules are stated to be as follows: (1) those holding any deviation, no matter how slight, will defeat liability; (2) those holding that once permission is given, it will extend to any and all uses of the car; and (3) those holding that slight deviation does not violate the omnibus clause. In the Lloyds case, the Oklahoma Court gives its adherence to the third rule and holds that a slight deviation does not violate the permissive use so as to prevent the application of the omnibus clause.

Granting, for the sake of argument, that Yarsant's permission to use the truck was a general permission to haul dirt and that, therefore, his agreement to haul dirt for this woman was within the permissive use, this would not apply to his agreement to haul a water heater. Clearly, he had no permission to use the truck for such a purpose. If that were so, it would likewise give him the right to haul a stove, a refrigerator, furniture, or groceries. To so hold would convert a permit for a limited use into one for a general use.

We think the facts in this case are, in effect, indistinguishable from those in Indemnity Insurance Company v. Sanders, 169 Okl. 378, 36 P.2d 271. There Walker obtained permission of Supernaw, the owner of an automobile, to drive it from his farm home to a bank in Skiatook, for business purposes. He was to return to the farm when that mission was completed. In-

stead, he retained the car until the following day and while one Brown was driving the car and Walker was a passenger with him, an accident occurred in Tulsa. The Supreme Court of Oklahoma held that Walker was driving the car outside the scope of the granted permission at the time of the accident and that, therefore, there was no coverage under the policy.

In order to find coverage here, the record would have to sustain a finding that Yarsant had permission to do any and all kinds of hauling. There is no evidence warranting such a finding. We think the undisputed evidence requires a finding that Yarsant had no permission to use the truck to haul the water heater and that, therefore, at the time of the accident he was not an insured person under the plain terms of the policy.

Reversed and remanded with directions to enter judgment for the appellant.