JOSHUA C., By and Through His Mother, DENISE L., and His Grandmother, Birdie Mae S., Appellants,

v.

WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. I–41 OF OKLAHOMA COUNTY; Sharon Lease, In Her Official Capacity as Superintendent of Western Heights Public School District; and Linda Proctor Moore, In Her Official Capacity as Principal of Council Grove Elementary School, Appellees,

and

Margaret Erling, In Her Official Capacity as a Member of the State Board of Education; Sherman Floyd, In His Official Capacity as a Member of the State Board of Education; Albert Johnson, In His Official Capacity as a Member of the State Board of Education; Ray Potts, In His Official Capacity as a Member of the State Board of Education; Jerry Ogden, In His Official Capacity as a Member of the State Board of Education; Michael Mitchel, In His Official Capacity as a Member of the State Board of Education, Defendants.

No. 83664.

Court of Appeals of Oklahoma, Division No. 3.

May 9, 1995.

Terry J. Hull, Oklahoma City, for appellants.

Amie Rose Colclazier, Seminole, for appellees Western Heights, Sharon Lease and Linda Moore.

## OPINION

HUNTER, Judge:

Appellants, Joshua C., by and through his mother Denise L., and his grandmother, Birdie Mae S., seek review of the trial court's order which denied their motion for Writ of Mandamus. Appellants brought this action against Appellees, Independent School District No. I–41 a/k/a Western Heights Public School District, Sharon Lease and Linda Proctor Moore (collectively "School") alleging School and other defendants failed to perform their duties under 70 O.S.Supp.1993, §§ 1–113(A)(1) and (G) and 1–114(A).[1] Specifically, Appellants alleged School failed to perform its duty to enroll Appellant Joshua C. in Council Grove Elementary School in Western Heights Public School District, the school district wherein his grandmother resides. The trial court denied the Writ, finding there was no clear, legal duty on the part of School to admit Joshua to a school of the District. The trial court further found that 70 O.S.Supp.1993, § 1–113(A) requires that in order to establish legal residence for school purposes, a person who is not the parent or guardian of a child, must have the *legal* care and custody of that child. Appellants appeal this determination.

The facts approved by the trial court as the Statement of the Evidence in the Order

1. Appellants' motion to dismiss this appeal as to Defendants Erling, Floyd, Johnson, Potts, Ogden and Mitchel was approved by the Oklahoma Supreme Court on August 4, 1994. In their motion for writ of mandamus, Appellants' alleged these defendants failed to perform their statutory duty to adopt written procedures as required by 70 O.S.Supp.1993, § 1–113(G). These defendants, the Board of Education, adopted an emergency rule providing for such procedures. The new rule was signed by the Governor on July 21, 1994. Because of such actions, Appellants dismissed their appeal as to these particular defendants.

Approving Narrative Statement show Joshua began living with his grandmother on March 23, 1994. The grandmother is a resident of the Western Heights School District. Previously, Joshua's mother had applied for and was denied a legal transfer for Joshua from the El Reno Public School District to Western Heights. The grandmother and Joshua's mother, a resident of El Reno School District, went to Western Height's administrative offices to enroll Joshua in school. Appellants allege the grandmother "prepared to swear out an affidavit of residency" and also presented written powers of attorney, executed by both Joshua's mother and father, which allegedly gave the grandmother authorization to "make decisions on plaintiff's behalf for medical, educational and other emergency situations which might arise while he attended Council Grove Elementary School". Western Heights refused to enroll Joshua, claiming he is not a resident of the district.

According to the affidavit of Joe Kitchens, Joshua was a special education student in the El Reno public schools. On March 31, 1994, Kitchens was informed by the El Reno school system that Joshua's mother had enrolled three dependent children, including Joshua in that system on August 19, 1993. Kitchens had received a call from Joshua's mother who informed him she wished for Joshua to attend school in Western Heights to receive the services of a particular speech therapist at Western Heights. Although School denied in its answer that it informed the mother that Joshua could only attend school in Western Heights if the grandmother obtained a court-ordered guardianship over Joshua, this affidavit shows Kitchens told the mother Joshua could be enrolled in Western Heights if the mother obtained a transfer or if the grandmother was appointed "legal guardian". There is no allegation that Joshua's mother has relinquished her parental rights over Joshua.

■ Mandamus is an extraordinary equitable remedy controlled by statute. *Dale v. City of Yukon,* 618 P.2d 954 (Okla.App. 1980); 12 O.S.1991, § 1451 et seq. The movant must allege:

1. a clear legal right on the movant's own part to have the things done which are asked for;

2. the clear and indisputable legal duty of the respondent to do the things he is called upon to do and that it is a nondiscretionary act, or the movant must allege an arbitrary, capricious or unreasonable action done under the guise of exercise of discretion by the respondent that equals an abuse of discretion,

3. that the writ will afford movant an adequate remedy and

4. the inadequacy of any other remedy.

*Dale,* at 957. Mandamus will not lie where a movant fails to show a clear legal right thereto. *Jones v. Shaw,* 441 P.2d 990 (Okla.1965). The issuance of a writ of mandamus is left to the sound equitable discretion of the trial court. On appeal, this Court will examine the record but the trial court's judgment will not be reversed unless an abuse of discretion is shown. *Dale,* 618 P.2d at 958. See also *Board of County Commissioners of Muskogee County v. City of Muskogee,* 820 P.2d 797 (Okla.1991).

Appellants' motion for the writ was filed March 30, 1994. At that time, 70 O.S.Supp. 1993 § 1–113(A), provided in part:

A. *When used in this section, unless the context otherwise requires, the residence of any child for school purposes shall be:*

1. *The school district in which the parents, guardian, or person having the care and custody of the child holds legal residence, if the parents, guardian, or person contributes in major degree to the support of such child;* or

2. The foster home, as defined in Section 25 of Title 10 of the Oklahoma Statutes, in which the child has been placed:

    a. by the person or agency having legal custody of the child pursuant to a court order, or

    b. by a state agency having legal custody of the child pursuant to the provisions of Title 10 of the Oklahoma Statutes; or

3. Any orphanage or eleemosynary child care facility having full-time care and custody; or

4. Any state-operated institution in which a child has been placed by a parent or guardian or by a state agency having legal custody of the child pursuant to the provisions of Title 10 of the Oklahoma Statutes for care and treatment due to a physical or mental condition of the child; or

5. The district in which a child who is supporting himself entirely by his own efforts resides and attends school; or

6. The legal residence of the parents or guardian of a child who has been placed in a public or private residential child care or treatment facility, voluntarily by a parent or guardian, or by court order, or by a state agency having legal custody.

\*    \*    \*    \*    \*    \*

Subsections B through F of Section 1–113 relate to residency determinations for children placed in public and private residential child care or treatment facilities and state institutions. We note that Section 1–113 was amended by the Legislature in 1994, effective July 1, 1994, four months after this action was filed.[2]

Appellants maintain mandamus is appropriate because it has a clear legal duty under 70 O.S.Supp.1993, § 1–114 to enroll Joshua in the Western Heights school system and that he has a clear legal right to attend such school under 70 O.S.Supp.1993, § 1–113(A). Specifically, he maintains he is a resident of the district because his grandmother lives in the district and she has "care and custody" of him. "Custody" as contemplated by § 1–113 does not require "legal custody", he argues, just "physical custody". Appellees maintain they only have a duty to enroll "residents" of the district and because Joshua is not a resident of the district, he is not entitled to be enrolled in Western Heights. Appellees

argue the term "custody" as used in § 1–113 must mean legal custody.

70 O.S.Supp.1993, § 1–114(A) provides in part:

A. All children between the ages of five (5) years on or before September 1, and twenty-one (21) years on or before September 1, shall be entitled to attend school free of charge in the district in which they reside. \* \* \* \*

Clearly, School has a duty to provide a free public education to its residents. Is Joshua a "resident" of Western Heights under 70 O.S.Supp.1993, § 1–113? We agree with the trial court that he is not.

       The fundamental rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. *State ex rel. Hicks v. Freeman,* 795 P.2d 110, 112 (Okla.Crim.App. 1990). Legislative intent is ascertained from the whole act in light of its general purpose and objective. *Rout v. Crescent Public Works Authority,* 878 P.2d 1045, 1050 (Okla. 1994). "A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision". *State ex rel. Hicks,* at 112. Where possible, all relevant portions of a statute and related enactments will be considered together to give force and effect to all of them. *Id.*

Under § 1–113(A)(1), the residence of a child for school purposes shall be either 1) the school district in which the child's parents hold legal residence or 2) the school district in which the child's guardian holds legal residence or 3) the school district in which a person having "care and custody" of the child holds legal residence. Section 1–113 was first enacted as a part of the Oklahoma School Code. O.S.Laws 1971, Ch. 281, § 1–101 et seq. Section 1–113 which establishes residency of children for school pur-

---

**2.** The amended section clearly provides the custody referred to in § 1–113(A)(1) is *legal* custody, and that if a child is placed by the parent in a voluntary arrangement with an adult *not having*

*legal custody or guardianship of the child,* an emergency transfer is required. 70 O.S.Supp. 1994, § 1–113(C)(1)(a)(3).

poses, is part of a comprehensive scheme to provide public education to the children of this State. A part of that scheme includes state funding for public schools which is based on average daily attendance (ADA). See 70 O.S.1991, § 18–101 et seq. Section 18–111 of Title 70 provides in part:

> No pupil shall be counted in the average daily attendance of any district for the purpose set out in this article unless said pupil is a *legal resident of said district as provided for in Section 1–113 of this title or has been transferred to said district.*
> * * * *

Thus, the determination of a district's ADA through residency and transfers is critical to a school district's funding. The provisions for transfers between districts are set forth in 70 O.S.1991, § 8–101 et seq. Through the transfer provisions, state aid will follow the child to the district the child is transferred. The record shows Appellants sought and were denied a transfer and after such denial, have sought to establish Joshua's residency through his grandmother in the Western Heights district.

■ The word "custody" is not defined in the school laws. In Webster's Third New International Dictionary, "custody" is defined as "the act or duty of guarding and preserving (as by a duly authorized person or agency); safekeeping; protection, care, maintenance, and tuition: guardianship; judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it." "Legal custody" as defined in Black's Law Dictionary, 6th Ed., means "restraint of or responsibility for a person according to law, such as guardian's authority over the person or property, or both, of his ward".

■ Although Subsection (A)(1) only refers to "custody", other portions of § 1–113 which were added to the statute after it was enacted and which provide for residency determinations of children placed in a public or private residential child care or treatment facilities and for foster children, refer to "legal custody" over the children. Generally, where a word or phrase is used in different parts of a statute or act, it will be presumed to have the same meaning throughout and where the meaning in one instance is clear, this meaning will apply elsewhere therein, unless it plainly appears the Legislature intended to use it in a different sense. *Walton v. Donnelly*, 83 Okl. 233, 201 P.367, 370 (1921).

■ An examination of the language used in the statute, the context it is in, and the general purpose sought to be achieved through the statute leads us to conclude the term "custody" as used in § 1–113(A)(1) denotes "legal custody". That is, responsibility for a person *according to law*. Physical custody alone is not sufficient to change a child's "residency" for purposes of school law. To hold physical custody alone of a child is sufficient to establish residency, could lead to the result where parents would allow their children to temporarily live with other relatives or friends simply to attend school in a more preferable school district. This construction could also create undesirable and unnecessary difficulties in the administration of the school district system. Such a result would place an absurd construction on the law. See *Gray v. Board of Education of Pawhuska Independent School District*, 389 P.2d 498 (Okla.1964).[3]

Appellants have failed to demonstrate Joshua's grandmother has Joshua's "care and

---

**3.** In *Gray,* the question at issue regarded the residency for school purposes of minor children who were "living with" their grandparents. Section 1–14 of Title 70 provided: "The residence of any child for school purposes shall be the legal residence of the parents, or guardian, or person or institution having the care and custody of the child, if such parents, or guardian, or person or institution having the care and custody, contributes *in major degree* to the support of such child:

* * *." In *Gray,* the children lived in the home of their parents. The grandfather did not have the "legal care and custody" of the children but the children sometimes spent the night with the grandfather and got meals there. The decision primarily turned upon a construction of the above-underlined language in § 1–14. The Court concluded that where the parents of minor children residing in the family home, have their *legal* care and custody, and contribute to their support

custody" as such is contemplated for establishing residency under 70 O.S.Supp.1993, § 1–113(A)(1). Accordingly, they have failed to establish Joshua's clear legal right to attend school in the Western Heights school district and to establish breach of duty by School to admit Joshua to such school by Appellees. Appellants' request for a writ of mandamus was appropriately denied.

The decision of the trial court is AFFIRMED.

GARRETT, J., concurs.

ADAMS, J., dissents.

in a substantial degree, the school residence of the children is the same as the residence of the parents.