1998 OK CIV APP 82

**Bigler Jobe STOUFFER, II, Plaintiff/Appellant,**

**v.**

**Ron WARD, Defendant/Appellee,**

**and**

**Griffin Memorial Hospital (G.M.H.); Department of Human Services (D.H.S.); Oklahoma Memorial Hospital (O.M.H.); Oklahoma Medical Center (O.M.C.); Office of State Finance (O.S.F.); Office of Public Affairs (O.P.A.); Oklahoma Department Finance Authority (O.D.A.); Oklahoma College of Medicine (O.C.M.); Health Sciences Center (H.S.C.); John Marsh, M.D.; Mr. Cannon, M.D.; Ms. Bynum, M.D.; O. Perurena, M.D.; John Nelson, M.D.; Carl Price, M.D.; Mark Bigler, M.D.; Susan B. Loving; W. Craig Suter; Drew Edmonson; Sarah Hawxby; Guy Hurst; John Doe # 1; John Doe # 2; John Doe # 3; Ken Klingler; Cliff Uranga; John East; Arturo Dela Rosa; Milton Vogt; Priscilla**

---

Drummond; Sheila Cook; Fred Cook; Carolyn Pugh; R.E. Brazee, D.D.S.; Donna Oliver; Steve Wakeford; Glenda Blevins; Lee Mann; Institutional Health Care Center (I.H.C.C.); K. Abrahamson; V. Roberts; Ken Harris; J. Williams; Linda Davis; J. Kirk Patrick, Ken Yott; J. Pearce; Dan Alexander; Melvin Campbell; M. Moore; P. Rogers; J. Saffle; Phil Dessaver; James Stuart; Calvin Muse; Gregory Hall; Hugh Reed; Betty Tow; Board of Corrections; Larry Fields; Howard Ray; Kathy Waters; Dan Reynolds; Charles Schroeder, D.D.S.; J. Robert Dille, M.D.; Dennis Cotner; Delores Ramsey; Jon D. Tillinghast, M.D.; Lee Barrett; Charles Needham, Defendants.

No. 90097.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 22, 1998.

B.J. Stouffer II, McAlester, Appellant, Pro Se.

W.A. Drew Edmondson, Attorney General, Charles K. Babb, Assistant Attorney General, Oklahoma City, for Defendant/Appellee.

CARL B. JONES, Vice Chief Judge:

¶ 1  Plaintiff/Appellant Biggler Jobe ("B. J.") Stouffer II commenced this action against Defendant/ Appellee Ron Ward, warden of the Oklahoma State Penitentiary where Stouffer is incarcerated, and numerous other parties.  In his petition, Stouffer sought a writ of mandamus to compel the defendants to:

(1) provide him photocopies of an amended petition and exhibits filed in an earlier lawsuit he had filed in the trial court;

(2) allow him confidential telephone calls to attorneys and other "authorized representatives ... for counsel and advise [sic] in this and other pending litigation," to which he claimed he was entitled under the federal court case of *Mann v. Reynolds;* [1] and

(3) afford him use of certified, restricted-delivery mail so he could obtain service of process upon the defendants in the earlier district court action.

The trial court dismissed the case after objection by Appellee Ward. Stouffer's motion to reconsider was denied.

¶ 2  A writ of mandamus may issue from a district court or an appellate court, or any justice or judge thereof, to "compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station." 12 O.S.1991 § 1451.  The writ may not be issued when there is a plain and adequate legal remedy available to the plaintiff, or when there is a valid excuse for not performing the act.  12 O.S.1991 §§ 1452, 1454.  A request for writ of mandamus invokes the trial court's equitable jurisdiction.  In such cases, this Court will examine the entire record, but will not overturn the trial court's decision unless we are persuaded that the decision is arbitrary and capricious, or that the court abused its discretion.  *Joshua C. v. Western Heights Indep. Sch. Dist. No. I-41,* 1995 OK CIV APP 73, ¶ 4, 898 P.2d 1324, 1326; *Dale v. City of Yukon,* 1980 OK CIV APP 55, ¶ 12, 618 P.2d 954, 958.

¶ 3  The trial court held that Stouffer failed to show a clear legal right to the writ, failed to show that Appellees had refused to perform some plain legal duty, and failed to demonstrate unavailability of other adequate legal remedies.

¶ 4  In the earlier trial court action, Stouffer apparently sued several parties on civil rights and breach of contract theories to redress denial by prison authorities of medical and surgical treatment he thought he needed.  The amended petition and exhibits to which he refers also appear to have been quite lengthy—250 originals in all.  According to the attachments to his petition for writ of mandamus in the present case, Stouffer asked for 55 copies of the pleading and exhibits, a total of 13,750 pages.  A few days later, after the first request had been denied, he asked for 60 copies, equal to 15,000 pages.  And, a few days after that he asked for 71 copies, or 17,750 pages.  Each of those requests was denied by the officer in charge of the law library as "too voluminous."  There are other requests in the record, not all of them relating to the earlier case, which were satisfied in part by the library officer and rejected in part.

¶ 5  Stouffer complains that he could not obtain copies of the documents he wanted to serve upon all of the various defendants in his civil rights/breach of contract action.  In response, Appellees contend that established jurisprudence governing prisoners' right of access to the courts does not require prison authorities to furnish unlimited copies of documents to indigent prisoners such as Stouffer.  Speaking of earlier authority, the United States Supreme Court recently said the case "does not guarantee inmates the where-

---

1.  828 F.Supp. 894 (W.D.Okla.1993), *aff'd in part,* *rev'd in part,* 46 F.3d 1055 (10th Cir.1995).

withal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools [the case] required to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996), discussing *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Braun v. State*, 1997 OK CRIM APP 26, ¶ 13 n. 6, 937 P.2d 505, 509 n. 6.

¶ 6 From the record, we are unable to discern that Stouffer had a clear right to obtain the copies he demanded. Even if we assumed that Stouffer's previous action in some way challenged a condition of his confinement (which assumption we consider problematic at best, given the record before us), Stouffer has not shown us that the trial court abused its discretion by denying his request for mandamus relief.

¶ 7 The record also fails to disclose a clear legal basis for Stouffer's request to have confidential phone calls with all of the attorneys and other "authorized representatives" with whom he desires to speak, *Mann v. Reynolds*, upon which he relies, certainly does not require what Stouffer wants. So far as we can tell, all the prison officials have done is to limit Stouffer to a certain number of attorneys and others on the approved call list, and have questioned whether all of the persons he wants to call are "authorized representatives" as defined in prison regulations, i.e., attorneys or licensed investigators.

¶ 8 Stouffer's third basis for seeking the writ was to compel the prison officials to furnish him free certified mail so he could serve the numerous defendants in his civil rights/contract action. Attached to his original petition were copies of prison regulations which provide generally that, "Certified mail services will be made available to inmates in order to effect proper service of petition and summons on all named defendants in lawsuits at cost to the inmate. If the inmate is indigent, the facility will provide services at no cost to the inmate."

¶ 9 To his objection below, the warden attached a *subsequent* version of the prison rules stating, "Certified mail privileges will be available to inmates at cost unless the inmate is indigent. If indigent, certified mail service will only be provided to show delivery of legal pleadings to the court clerk, both district level and appellate court level." The only request in the record regarding certified mail services relates to missing return receipts from three mailings in March, 1995. There is no request in the record for certified mail services relating to service of process in the civil rights/contract action. Nor is there any specific citation of regulation or statute which would grant Stouffer the right to certified mail services.

¶ 10 Discussion of this aspect of the case must therefore be placed in the context of Stouffer's assertion that he has been deprived of his constitutional right of access to the courts. *See* Okla. Const., art. II, § 6, which in relevant part guarantees, "The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property or reputation." Section 6 is intended "to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief." *Rollings v. Thermodyne Indus., Inc.*, 1996 OK 6, ¶ 9, 910 P.2d 1030, 1032; *see Wagoner County Election Bd. v. Plunkett*, 1956 OK 329, 305 P.2d 525, 530–32. But, Stouffer has not shown that he has been deprived of access to the courts different from other indigent prisoners. As Appellees point out, the problem is not that Stouffer cannot sue, for he has certainly done so in this and previous cases. That there are limits on the extent to which prisoners may secure financial assistance from the state or its prison authorities for conducting all manner of litigation does not, in our view, amount to an infringement of their right of access to the courts.

¶ 11 For the reasons expressed in this opinion, the Court holds that Stouffer was not and is not entitled to the requested writ,

and the trial court therefore did not abuse its discretion by denying relief.

¶12 AFFIRMED.

JOPLIN, P.J., and GARRETT, J., concur.

