2001 OK CIV APP 90

**R.L. SANFORD and Mary Jane Sanford, husband and wife, Plaintiffs/Appellees,**

v.

**ANADARKO PETROLEUM CORPORATION, Defendant/Appellant.**

**No. 95,043.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 5, 2001.

Certiorari Denied June 19, 2001.

Alan Agee, Bret Agee, Pauls Valley, OK, for Plaintiffs/Appellees.

Mark D. Christiansen, C. Robert, Oklahoma City, OK, for Defendant/Appellant.

*OPINION*

GARRETT, Judge:

¶ 1 Appellant, Anadarko Petroleum Corporation, appeals the judgment which was entered after the court sustained the motion for summary judgment of Appellees, R.L. and Mary Jane Sanford, in their action against Anadarko under the Oklahoma Surface Damages Act (the Act), 52 O.S.1991 §§ 318.1, et seq. Sanfords were awarded treble damages against Anadarko pursuant to 52 O.S.1991 § 318.9 [1], for commencing a well on their

---

1. Upon presentation of clear, cogent and con-    vincing evidence that the operator willfully and

property without their agreement, and without previously asking the court to appoint appraisers.

¶2 Anadarko claims it filed its petition within eight business days after they brought equipment onto the property. It is undisputed that it had complied with the requirement of posting a bond and of notifying the Sanfords of its intent to drill. An agreement had not been reached and the petition had not been filed prior to Anadarko's entry onto the property, however.

■ ¶3 The crux of Anadarko's argument is that it is immaterial whether its petition for appointment of appraisers is filed before or after it enters upon the property to commence drilling operations. It contends the statutory requirement under § 318.9 of "prior to entering" applies only to the bond and notification requirements, but does not apply to the conditions stated thereafter: (1) the failure to reach an agreement and (2) asking the court for appointment of appraisers. Therefore, Anadarko argues, since it did *eventually* file its petition, it complied with the statute. The applicable portion of § 318.9 provides:

> Any operator who willfully and knowingly fails to keep posted *the required bond or who fails to notify* the surface owner, *prior to entering, or fails to come to an agreement and does not ask the court for appraisers,* shall pay, at the direction of the court, treble damages to the surface owner. [Emphasis supplied.]

¶4 We construe this statute to require the filing of the petition before entering the property. Treble damages would not be awarded against an operator which: (1) failed to reach an agreement with the surface owner, (2) which failed to ask the court to appoint appraisers, but (3) which did not go onto the property. Clearly, the operator's

knowingly entered upon the premises for the purpose of commencing the drilling of a well before giving notice of such entry or without the agreement of the surface owner, the court may, in a separate action, award treble damages. The issue of noncompliance shall be a fact question, determinable without jury, and a de novo issue in the event of appeal.

Any operator who willfully and knowingly fails to keep posted the required bond or who fails to

entry upon the surface triggers the application of the statute. This interpretation is consistent with another section of the Act, 52 O.S.1991 § 318.5(A), which provides:

> § 318.5. Negotiating surface damages—Appraisers—Report and exceptions thereto—Jury trial
>
> A. Prior to entering the site with heavy equipment, the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation. If the parties agree, and a written contract is signed, the operator may enter the site to drill. *If agreement is not reached, or if the operator is not able to contact all parties, the operator shall petition the district court in the county in which the drilling site is located for appointment of appraisers to make recommendations to the parties and to the court concerning the amount of damages, if any. Once the operator has petitioned for appointment of appraisers, he may enter the site to drill.* [Emphasis supplied.]

■ ¶5 The fundamental rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. Legislative intent is ascertained from the whole act in light of its general purpose and objective. Where possible, all relevant portions of a statute and related enactments will be considered together to give force and effect to all of them. *Kratz v. Kratz,* 1995 OK 63, 905 P.2d 753, 755; *Joshua C. By and Through Denise L. v. Western Heights Independent School Dist. No. I–41 of Oklahoma County,* 1995 OK CIV APP 73, 898 P.2d 1324, 1327; *J.D. Graham Const. Inc. v. Pryor Public Schools Independent School Dist. No. 1, Mayes County,* 1993 OK CIV APP 44, 854 P.2d 917, 920 (cert.denied). Section 318.5(A) is consistent with our

notify the surface owner, prior to entering, or fails to come to an agreement and does not ask the court for appraisers, shall pay, at the direction of the court, treble damages to the surface owner.

Damages collected pursuant to this act shall not preclude the surface owner from collecting any additional damages caused by the operator at a subsequent date.

interpretation and construction of § 318.9, i.e., that the petition to appoint appraisers must be filed before entering the property if the surface owner and operator have been unable to reach an agreement. Otherwise, § 318.5(A) would be meaningless. This construction of § 318.9 is also consistent with the policy and purpose of the Act, to strike a balance between two competing interest owners, as explained by the Supreme Court in *Schneberger v. Apache Corporation, 1994 OK 117, 890 P.2d 847*, 853:

> [W]e begin by stating the obvious; the state of Oklahoma is committed to protecting the environment and preserving the state's natural resources. This is all the more evident given the passage of the Surface Damage Act, 52 O.S.Supp.1982, § 318.2 et seq., which states Oklahoma's policy regarding damage to land caused by oil and gas drilling operations. However, the intent of the Act was never to tip the scale in favor of one interest over the other, but rather, provide a balance between these two competing interests.

> It cannot be said that the surface of the land constitutes a less vital resource to the State of Oklahoma than does the mineral wealth which underlies it. The surface supports development for business, industrial and residential purposes. It also supports our vital agricultural industry. The passage of the surface damages act guarantees that the development of one industry is not undertaken at the expense of another when the vitality of both is of great consequence to the well-being of our economy. In times when both the agricultural and oil and gas segments of our economy are suffering it is especially important that such legislation is enforced. *Davis Oil Co., 766 P.2d 1347*, 1351 (Okla.1986).

Prior to the Surface Damage Act, the holder of an oil and gas lease had almost an unrestricted right to go on the leased land and prospect for oil. The only basis for recovery of damages was proof of wanton or negligent destruction of the land or use of lands not reasonably necessary for oil and gas exploration. *Wilcox Oil Co. v.*

*Lawson, 341 P.2d 591*, 594 (Okla.1959). The measure of damages for negligent destruction of land or crops was the difference between the value of such land before the injury and the value after the injury. *Id.* at 595.

The Surface Damage Act changed the standard of liability for damages to the surface estate, requiring the holder of an oil and gas lease to negotiate with the surface owner, *prior to beginning operations*, for the payment of damages which may be caused by the drilling. 52 O.S. 1991, § 318.5. As noted above, this change in liability reflected a legislative effort to balance the interests of the two resource owners and expressed a change in policy toward promoting environmental conservation. *Davis Oil Co.*, 766 P.2d at 1351. [Emphasis supplied.]

Accord, *Turley v. Flag–Redfern Oil Co., 1989 OK 144, 782 P.2d 130*, 136:

> Under the Act, surface owners are provided a means of participating in a judicial procedure to determine losses suffered because of oil and gas mining operations.

¶ 6 While the surface owners' rights are to be protected, they alone are not paramount. Once it is clear the operator and surface owner cannot agree, the court's supervision becomes necessary. This procedure protects the interests of those who own the right to produce oil and gas, by allowing the drilling to proceed. It also protects the surface owners' interests, by having court-appointed appraisers determine a fair amount of compensation, with approval by the court. This procedure is commenced by filing a petition. This is what Anadarko failed to do. Allowing the operator to proceed, without first filing the petition, destroys the balancing of interests this Act was designed to accomplish.

■ ¶ 7 We acknowledge Anadarko's defense that it did file its petition and that it was only a short time after entering the property. The record shows Anadarko knew, and that its usual procedure was, to file the petition prior to entering the property.[2] It alleged in the trial court that it proceeded at that time because of the availability of certain equipment. However, we also acknowledge the Sanfords found it nec-

---

2. A letter to the Sanfords from Anadarko's counsel, dated April 24, 1998, was attached as eviden-

essary to sue Anadarko after it entered its property, and that Anadarko's petition was filed soon thereafter. Regardless of the reason the events occurred in that sequence, § 318.5 required Anadarko to file its petition before commencing its operations, and the evidence shows that the violation of the statute was "willfully and knowingly" done. Section 318.9 supports the judgment against Anadarko for treble damages.

¶8 Summary judgment is proper, where there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61; *Thompson v. Peters*, 1994 OK CIV APP 97, 885 P.2d 686 (cert. denied 1994). In the instant case, the facts are not disputed. The trial court correctly followed the law in denying Anadarko's motion for summary judgment and sustaining the Sanfords' motion for summary judgment.

¶9 AFFIRMED.

¶10 HANSEN, C.J., and BUETTNER, P.J., concur.

tiary material to Anadarko's motion for summary judgment and the Sanfords' response. It discusses the parties' failure to reach an agreement and states:

Please call me upon receipt of this letter so we might continue our discussions and hopefully reach an agreement. *If we are unable to reach an agreement, we will be required to file a Petition for Appointment of Appraisers in accordance with Oklahoma law and begin operations without an agreement.* [Emphasis supplied.]