OSCN Found Document:SHELTER MUTUAL INSURANCE CO. v. AMERICAN HALLMARK INSURANCE CO.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 SHELTER MUTUAL INSURANCE CO. v. AMERICAN HALLMARK INSURANCE CO.
2014 OK CIV APP 66
Case Number: 111649
Decided: 06/11/2014
Mandate Issued: 08/01/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 66, __ P.3d __

SHELTER MUTUAL INSURANCE COMPANY, Plaintiff/Appellant,
v.
AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS, d/b/a HALLMARK INSURANCE, and LIBERTY MUTUAL INSURANCE COMPANY, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF CARTER COUNTY, OKLAHOMA

HONORABLE DENNIS MORRIS, JUDGE

AFFIRMED

Stephen L. Olson, Daniel J. Card, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, Oklahoma City, Oklahoma, for Plaintiff/Appellant,
Albert L. Tait, Jr., J. Mark McAlester, Sterling E. Pratt, FENTON FENTON SMITH RENEAU & MOON, Oklahoma City, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Judge:

¶1 Plaintiff/Appellant Shelter Mutual Insurance Company ("Shelter") brought suit against Defendant American Hallmark Insurance Company d/b/a Hallmark Insurance ("Hallmark") and Defendant/Appellee Liberty Mutual Insurance Company ("Liberty Mutual") seeking pro rata contribution for insurance claims submitted to Shelter resulting from an automobile accident involving one of Shelter's insureds.[1] Shelter appeals a summary judgment awarded to Liberty Mutual.

¶2 On September 28, 2010, Brendan Faulkner, a minor ("Faulkner"), was involved in an automobile accident in Ardmore, Oklahoma. Faulkner, who was sixteen (16) years old at the time, was permissively driving a vehicle owned by Claudia Herweck ("Herweck") and insured by Shelter. Herweck is the grandmother of one of Faulkner's friends, and Faulkner had been living with his friend and Herweck for some time prior to the accident.[2] The accident was caused by Faulkner's negligence, and Shelter received claims from third parties for property damage and personal injuries allegedly sustained as a result of the accident. Shelter's policy with Herweck contained an "other insurance clause" which Shelter claimed entitled it to pro rata contribution from other insurers whose policies also covered Faulkner. Specifically, Shelter claimed Faulkner was covered by a Liberty Mutual auto policy held by Faulkner's great-grandmother, Zaylon Boyd ("Boyd").

¶3 At the time of Faulkner's accident, Boyd lived with her granddaughter who is Faulkner's mother, Christina Cottrell ("Cottrell").[3] Boyd maintained auto insurance with Liberty Mutual on a 2008 Honda Civic. The Liberty Mutual policy stated it would provide liability coverage for "non-owned auto[s]"[4] for any "family member." "Family member" was defined as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household. This includes a ward or foster child."

¶4 Liberty Mutual filed a summary judgment motion arguing it had no policy in effect which provided coverage to Faulkner. Specifically, Liberty Mutual conceded Faulkner was a blood relative of Boyd, the named insured, but argued Faulkner was not a resident of Boyd's household such that he fell within the definition of "family member." Liberty Mutual argued Faulkner was a member of Herweck's household because he paid rent, did not receive support from Cottrell, and was not staying overnight at Cottrell's house during the time of the accident. Shelter disputed Liberty Mutual's assertion Faulker was not a member of Boyd's household because Faulkner was an unemancipated minor incapable of establishing a residence separate and apart from his parents, and if anything, had dual residency with both Herweck and Cottrell. Shelter maintained that Boyd lived with Cottrell, and all three family members, Boyd, Cottrell, and Faulkner, were members of the same household. Shelter stated Faulkner returned to Cottrell's home prior to the accident to eat meals and returned to her home after the accident, stayed overnight for a period of time, and was living with Cottrell during the time of the lawsuit.

¶5 The trial court determined there was a disputed fact as to whose household Faulkner was a member but concluded this disputed fact was not material to the issue of whether Liberty Mutual's policy covered Faulkner. The trial court stated, when viewing the facts in the light most favorable to the nonmovant (Shelter), Faulkner was a resident of Cottrell's (his mother's) household. However, the trial court determined Faulkner was not also a resident of Boyd's (his great-grandmother's) household. Although Boyd had "moved in" with Cottrell, this did not "constitute the 'household' as Boyd's 'household'." The trial court granted summary judgment in Liberty Mutual's favor, and Shelter commenced this accelerated appeal in compliance with Oklahoma Supreme Court Rule 1.36.

¶6 Appellate courts review orders of summary judgment de novo, giving no deference to the trial court. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if a genuine issue of material fact is in dispute. Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051. In so doing, we view the facts and all reasonable inferences arising therefrom in the light most favorable to the nonmovant. Id. "[S]ummary judgment is improper if under the evidence, reasonable minds could reach different conclusions from the facts." Vasek v. Board of County Comm'rs of Noble County, 2008 OK 35, ¶29, 186 P.3d 928.

¶7 In its summary judgment motion, Liberty Mutual argued the express terms of its automobile policy with Boyd did not extend coverage to Faulkner because he was not a "resident" of Boyd's "household." The trial court agreed finding, even though Faulkner was a "resident" of Cottrell's "household," it was not also Boyd's "household." Thus, "resident" and "household" are the dispositive terms of the policy but neither was defined in the policy itself.

¶8 "Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract. Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶5, 49 P.3d 703. "Parties may contract for risk coverage and will be bound by policy terms. When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions. The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof. This Court may not rewrite an insurance contract to benefit either party. . . . We will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered." BP America, Inc. v. State Auto Property and Casualty Ins. Co., 2005 OK 65, ¶6, 148 P.3d 832. (Footnotes omitted). "The construction of a policy should be natural and reasonable, viewed in the light of common sense. The result should not be absurd. The interpretation of an insurance contract and whether it is ambiguous is a matter of law that will be resolved by the court." Redcorn v. State Farm Fire & Casualty Co., 2002 OK 34, ¶4, 55 P.3d 1017. (Citation omitted). "An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer." Haworth v. Jantzen, 2006 OK 35, ¶13, 172 P.3d 193. [T]his Court will not indulge in strained interpretation to create such an ambiguity. Id.

¶9 Under Oklahoma law, the definitions of "resident" and "household" are somewhat intertwined. In Indemnity Ins. Co. of North America v. Sanders, 1934 OK 494, ¶¶16-17, 36 P.2d 271, the Oklahoma Supreme Court cited several definitions of "household", including one stating "persons who dwell together as a family constitute a 'household'," and a definition from Webster's New International Dictionary stating a household consists of "those who dwell under the same roof and compose a family." Sanders, ¶¶16-17 (internal quotations and citations omitted).[5] A more recent Oklahoma case cited with approval a definition of a "resident of a household" as "one who is a member of a family who lives together under the same roof; that residence emphasizes membership in a group rather than an attachment to a building." Henderson v. Eaves, 1973 OK 139, ¶24, 516 P.2d 270 (citing American States Ins. Co. v. Walker, 486 P.2d 1042 (Utah 1971)). Henderson, ¶25, also cited a definition of "resident" found in Webster's Dictionary: "Dwelling, or having an abode for a continued length of time; . . . one who resides in a place; one who dwells in a place for a period of more or less duration." While these descriptions are not exactly the same, the terms "resident" and "household" are not ambiguous terms. Their meanings are clear to a layperson, and being mindful of these previous cases, the definition found in Henderson, ¶24, is the most succinct: "resident of a household is one who is a member of a family who lives under the same roof."[6]

¶10 The trial court supported its decision to grant summary judgment in Liberty Mutual's favor by concluding Faulkner was a resident of Cottrell's household, but not Boyd's "household" even though Boyd and Cottrell resided together in the same home. Under these circumstances and understanding that a "household" is ordinarily a family group managed by one head, whether Boyd had her own "household" or was a member of Cottrell's "household" are questions we need not decide. Regardless of the answers to those questions, all members of a "household" must reside together under one roof. E.g. Henderson, 1973 OK 139, ¶24. The partial transcripts of the depositions of Faulkner, Boyd, and Cottrell provided in the record all agree Faulkner was not staying overnight at Cottrell's home.[7] For his part, Faulkner stated he was paying rent to Herweck and living with her and her grandson. Boyd stated Faulkner was not "staying at our place" at the time of the accident, and Cottrell confirmed Faulkner sometimes returned to eat meals with her but was not staying overnight. Contrary to the trial court's determination, we do not find there to be a disputed fact as to whether Faulkner was a resident of Cottrell's household. And because Boyd was living with Cottrell, neither was Faulkner a member of Boyd's household at the time of the accident. Faulkner was not residing under the same roof with either Cottrell or Boyd, which is an essential element to establishing he was a member of either's "household." Our de novo review of the record shows there was no dispute that Faulkner was not a member of Boyd's household because he did not reside under the same roof as Boyd at the time of the accident.[8]

¶11 Shelter also relied on the theory that Faulkner, as an unemancipated minor, could not establish a residency separate from his parents, particularly his mother, Cottrell. We find no statutory provision or Oklahoma case law supporting this position. Rather, Shelter relied on the fact Cottrell's divorce decree granted joint custody of Faulkner to her and a case decided by the Oklahoma Supreme Court discussing the residency of a minor in the context of public school education. Shelter cited 43 O.S. 2011 §551-106 which states, in relevant part, that a child custody determination "is conclusive as to all decided issues of law and fact except to the extent the determination is modified." Shelter relied on this statute and a definition of "custody" which included "judicial or penal safekeeping," Joshua C. By and Through Denise L. v. Western Heights Ind. School Dist. of Okla. County, 1995 OK CIV APP 73, ¶10, 898 P.2d 1324,[9] to show Cottrell's legal custody of Faulkner also meant he was a member of her household. While we agree Cottrell had legal custody of Faulkner, the term "custody" is not synonymous with the terms "resident" of a "household" as used in the Liberty Mutual policy. Oklahoma law requires family members to live together to be considered part of the same "household" for insurance purposes, and the undisputed fact remains all three of the family members supposedly comprising the "household" at issue -- Faulkner, Cottrell, and Boyd -- maintained Faulkner was not living under the same roof as the latter two family members.

¶12 While other jurisdictions have recognized the possibility of dual residency for unemancipated minor children of divorced parents in the context of insurance coverage, this state has not done so. See Aetna Cas. & Sur. Co. v. Williams, 623 So.2d 1005 (Miss. 1993); Countryside Cas. Co. v. McCormick, 722 S.W.2d 655 (Mo. 1987); Ohio Cas. Ins. Co. v. Estate of Wittkopp, 741 A.2d 619 (N.J. 1999). Notably, each of these decisions determined whether the minor children could be residents of both the custodial parent and non-custodial parent's home when the child primarily resided with the custodial parent but the non-custodial parent exercised visitation. We do not foreclose the possibility that unemancipated minors with divorced parents may maintain a residence at both parents' homes under Oklahoma law, but that is not the issue before this Court. The issue here is whether Faulkner resided under the same roof as Boyd to be a part of her "household" for purposes of insurance coverage. The undisputed facts show he did not.

¶13 For the reasons set forth above, the decision of the trial court is AFFIRMED.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

[1] Shelter and Hallmark reached a settlement agreement during the pendency of Liberty Mutual's summary judgment motion. Shelter filed a dismissal with prejudice as to Hallmark with the district court, and Hallmark is not a party to this appeal.

[2] In March 2010 Faulkner was sent to Thunderbird Youth Academy, a residential youth educational facility located in Pryor, Oklahoma. Faulkner graduated in July 2010 and moved in with his father, Christopher Faulkner, for approximately two weeks. Afterwards, he moved in with Herweck but would return to his mother's (Christina Cottrell) house to eat meals a few times per week.

[3] Faulkner's parents, Christina Cottrell and Christopher Faulkner, divorced in 1999. The parties' divorce decree granted joint custody of Brendan Faulkner to both the parents but established primary physical custody with Cottrell.

[4] The Liberty Mutual policy defined "non-owned auto" as:

1. Any private passenger auto, pickup, car or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member," or;

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its: (a) breakdown; (b) repair; (c) servicing; (d) loss; or (e) destruction.

[5] Sanders, ¶18 (citing Pearre v. Smith, 73 A. 141 (Md. 1909), also cited the following definition: "A family is a collective body of persons living in one house, and under one manager. It consists of those who live with the pater familias. The word is often used interchangeably with 'household'." With the foregoing definitions in mind, the Tenth Circuit Court of Appeals approved a jury instruction for the definition of "household" in the context of insurance coverage under Oklahoma law stating "for a place to be the household of one there must be therein a dwelling together as a family and said household must be supported by and under a single head or management. In other words, persons who dwell together as a family constitute a household." Hardesty v. State Farm Mutual Auto. Ins. Co., 361 F.2d 176, 177 (10th Cir. 1966).

[6] Arguably, the Supreme Court provided a broader definition of "household" in Flitton v. Equity Fire and Cas. Co., 1992 OK 2, ¶6, 824 P.2d 1132, stating "[c]lassification of those individuals coming within the definition of a 'family' or 'household' is not necessarily dependent upon the presence of a connection by affinity or consanguinity." However, Flitton addressed whether the insured's stepbrother, who undisputedly resided in the same household as the insured, was a "family member" within the meaning of the insurance policy where "family member" was defined as "a person related to [the insured] by blood, marriage or adoption who is a resident of [the insured's] household. This includes a ward or foster child." Here, there is no dispute Faulkner was related by consanguinity to the insured, Boyd, his maternal great-grandmother.

[7] In the partial deposition of Christopher Faulkner (Faulkner's father) included with Shelter's response to the summary judgment motion, Mr. Faulkner was asked if he knew whether his son was living with Cottrell after moving out of Mr. Faulkner's home shortly after graduating from Thunderbird Youth Academy. Mr. Faulkner, who was remarried and maintained his own home, separate and apart from Cottrell, stated Faulkner would go back and forth between Cottrell's home and Herweck's home but that he did not know how often Faulkner would return to Cottrell's home. Considering that everyone who Shelter asserts lived together in the same household -- Cottrell, Boyd and Faulkner, -- stated Faulkner did not live with Cottrell and Boyd, Mr. Faulkner's statement lacks probative value and is insufficient to create a disputed fact. Copeland v. Lodge Enterprises, Inc., 2000 OK 36, ¶9, 4 P.3d 695. ("For an item of evidentiary material to be insufficient to defeat a motion for summary judgment, it must either facially lack probative value or be incapable of conversion at trial to admissible evidence.")

[8] We will not disturb a legally correct judgment on review even if it relied on "faulty reasoning, erroneous fact finding or consideration of an immaterial issue." Brashier v. Farmers Insurance Co., Inc., 1996 OK 86, ¶15, 925 P.2d 20.

[9] Shelter's reliance on Western Heights, ¶12, for the proposition "[p]hysical custody alone is not sufficient to change a child's 'residency'. . ." is unpersuasive as that particular case relied heavily on specific terms used in the context of the Oklahoma School Code, 70 O.S. §§1-101, et seq. Additionally, the determination of the child's residency in that case was specifically limited "for purposes of school law" and has no application here. Western Heights, ¶¶1, 12.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1995 OK CIV APP 73, 898 P.2d 1324, 66 OBJ 2046, Joshua C. By and Through Denise L. v. Western Heights Independent School Dist. No. I-41 of Oklahoma County
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1992 OK 2, 824 P.2d 1132, 63 OBJ 278, Flitton v. Equity Fire and Cas. Co.
Discussed 2002 OK 15, 55 P.3d 1017, 73 OBJ 890, REDCORN v. STATE FARM FIRE & CAS. CO.
Cited 2002 OK 26, 49 P.3d 703, CRANFILL v. AETNA LIFE INS. CO.
Discussed 2002 OK 34, 55 P.3d 1030, BITUMINOUS CASUALTY CORP. v. COWEN CONSTRUCTION, INC.
Cited 1934 OK 494, 36 P.2d 271, 169 Okla. 378, INDEMNITY INS. CO. OF NORTH AMERICA v. SANDERS
Discussed 1973 OK 139, 516 P.2d 270, HENDERSON v. EAVES
Discussed at Length 2005 OK 65, 148 P.3d 832, BP AMERICA, INC. v. STATE AUTO PROPERTY & CASUALTY INSURANCE CO.
Discussed 2006 OK 35, 172 P.3d 193, HAWORTH v. JANTZEN
Discussed 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed 1996 OK 86, 925 P.2d 20, 67 OBJ 2338, Brashier v. Farmers Insurance Co., Inc.,
Discussed 2008 OK 35, 186 P.3d 928, VASEK v. BOARD OF COUNTY COMMISSIONERS
Discussed 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
Title 43. Marriage Cite
Name
Level 43 O.S. 551-106, Effect of Child Custody Determination
Cited
Title 70. Schools Cite
Name
Level 70 O.S. 1-101, Short Title
Cited