Renee BROWN, Plaintiff,

v.

Jon R. FORD, an individual, and Jon R. Ford Attorney, Inc., Defendants.

No. 84773.

Supreme Court of Oklahoma.

Oct. 3, 1995.

Shannon F. Davies, Brent A. Austin, Lester & Bryant, Oklahoma City, for plaintiff.

David W. Lee, Lee, Collins & Fields, Oklahoma City, for defendants.

OPALA, Justice.

The United States District Court for the Western District of Oklahoma [certifying court] certified the following questions pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 *et seq.:*

1. Does a cause of action for sexual harassment in the form of hostile work environment exist in Oklahoma when an employer has fewer than 15 employees?

2. Does a cause of action exist for sexual battery in the workplace?

3. If the answer to question two is "Yes," must Plaintiff show that Defendant knew the touchings were unwanted as an essential element of the claim?

4. Does the public policy reflected in the Oklahoma Anti–Discrimination Act provide an exception to Oklahoma's terminable-at-will employment doctrine that permits a cause of action for retaliatory termination based on the refusal to condone sexual touching when the employer has fewer that 15 employees?

5. If the answer to question 5 [*sic* 4] is "Yes," does the doctrine of after-acquired evidence of employee misconduct bar all relief in an action for retaliatory termination?

As we understand the *first* question, it asks whether a *common-law* action for wrongful discharge in *culmination* of work-related (or on-the-job) sexual harassment would lie against an *employer* with fewer than fifteen employees. By the *second* question, our attention is invited to whether Oklahoma recognizes a *private* cause of action for "sexual battery". The *first* and *fourth* certified questions are answered in the negative. In response to the *second* question, we declare that Renee Brown's [Brown or plaintiff] claim would be actionable as a common-law tort of assault and battery. We hence need not pause to consider whether the provisions of 21 O.S.1991 § 1123(B) [1] afford the basis for a tort claim. Our answers to the *second* and *fourth* questions make a response to the *third* and *fifth* [2] queries unnecessary.

I

## THE ANATOMY OF THE FEDERAL–COURT LITIGATION

Brown was employed as a paralegal by Jon R. Ford Attorney, Inc. [Firm], presumably a professional corporation, from March 5, 1992 until July 16, 1992. During this period the Firm employed a maximum of *five* persons, including both Brown and Jon R. Ford [Ford]—the latter its sole shareholder. The plaintiff complains that during her employ-

---

**1.** The pertinent terms of 21 O.S.1991 § 1123(B) are:

"No person shall commit sexual battery on any other person. 'Sexual battery' shall mean the intentional touching, mauling or feeling of the body or private parts of any person sixteen (16) years of age or older, in a lewd and lascivious manner and without the consent of that person. . . ."

**2.** We understand the *fifth* question as calling upon us to settle the issue whether an employer may interpose after-acquired evidence of an employee's on-the-job misconduct as a supervening ground for termination to defeat *all* liability for an earlier wrongful discharge. While we need not answer this question today, we note that *McKennon v. Nashville Banner Pub. Co.,* —— U.S. ——, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995), which dealt with a *federal statutory claim* for age discrimination, would afford helpful guidance to resolving this issue in the context of a *state common-law claim.*

ment Ford, without her consent, "sexually touched" her on several occasions. She eventually confronted him and requested that he discontinue the advances—which he did. Brown asserts that her rejection of his sexual advances motivated certain employment decisions that changed her earlier work requirements—*i.e.,* created a hostile work environment—which ultimately led to her dismissal by the Firm.

Brown brought suit against the Firm and Ford [defendants] for, among other things, sexual harassment, wrongful termination and "sexual battery". After denying the defendants' quest for summary judgment, the federal court certified the questions now before us.

## II

## THE NATURE OF THIS COURT'S FUNCTION WHEN ANSWERING QUESTIONS FROM A FEDERAL COURT

While the actionability of state-law claims identified in the submitted questions may be tested when answering the questions posed, it is not this court's province to intrude (by responses to be given) upon the federal court's decision-making process. Because *the case* is *not* before us *for decision,* we refrain, as we must, from (a) applying the

declared state-law responses to the facts elicited or to be elicited in the federal-court litigation and (b) passing upon the effect of federal procedure on the issues, facts and *proof* in the case (whether made by evidence at trial or by acceptable probative substitutes called "evidentiary materials" for use in the summary process of adjudication).[3] The task of analyzing the impact of today's answers must be and hence is deferred to the certifying court.

## III

## A STATE–LAW CLAIM FOR WRONGFUL DISCHARGE IN CULMINATION OF WORK–RELATED SEXUAL HARASSMENT, WHETHER IT BE RESTED ON STATUTE [4] OR COMMON LAW, CANNOT BE PRESSED AGAINST AN *EMPLOYER* [5] WITH FEWER THAN FIFTEEN EMPLOYEES

■ Brown's argument would have us conclude that the legislature's refusal to extend the sexual harassment remedy to persons engaged in a workplace of less than fifteen employees is constitutionally infirm when measured by the equal protection standards.[6] Under the U.S. CONST. amend. XIV, § 1,[7] if legislative classifications are neither violative of a constitutional or fundamental right [8] nor based upon a *suspect classifica-*

3. *Bonner v. Oklahoma Rock Corp.,* Okl., 863 P.2d 1176, 1178 n. 3 (1993); *Shebester v. Triple Crown Insurers,* Okl., 826 P.2d 603, 606 n. 4 (1992).

4. The pertinent terms of 25 O.S.1991 § 1302(A) are:
 "A. It is a discriminatory practice for an employer:
 1. To fail or refuse to hire, *to discharge,* or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of ... sex...." [Emphasis added.]

5. The provisions of 25 O.S.1991 § 1301(1) define *"employer"* to mean:
 "... a person *who has fifteen or more employees* for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year...." [Emphasis added.]
 Oklahoma's definition of "employer" closely corresponds to that found in federal law addressing

employment discrimination. *See* 42 U.S.C. § 2000e(b) whose terms define "employer" as:
 "... a person engaged in an industry affecting commerce *who has fifteen or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." [Emphasis added.]

6. For an overview of federal equal protection jurisprudence, see Perry, *Modern Equal Protection: A Conceptualization and Appraisal,* 79 Co-lum.L.Rev. 1023 (1979).

7. U.S. CONST amend. XIV, § 1 states in pertinent part:
 "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

8. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel).

tion—*i.e.*, race,[9] gender,[10] illegitimacy[11] or alienage,[12] they must be deemed presumptively valid so long as they are found to be rationally related to legitimate state interests.[13] A legislature is vested with wide discretion in passing laws which have the inevitable effect of treating some people differently from others.[14] These principles, which accord with federal and Oklahoma fundamental law and with this State's extant jurisprudence, recognize the power of the legislature to classify people for disparate *substantive-law* treatment.[15]

 In enacting 25 O.S.1991 §§ 1101 *et seq.*, Oklahoma's *Anti–Discrimination Act*, the legislature doubtless sought to avoid imposing upon *small shops* the potentially disastrous expense of defending against a state-law claim for workplace discrimination, whether based upon offending sexual conduct or on other grounds. We do *not* find this *legislatively declared objective* offensive to the Fourteenth Amendment's equal protection clause, to our own fundamental law, or to extant State jurisprudence. Neither private employment[16] nor freedom from sexual harassment within the workplace environment[17] is a fundamental right which *must be surrounded* by the shield of state law. The legislative purpose in enacting 25 O.S.1991 § 1302[18] bears a rational relationship to a permissible state objective and the challenged statute is *gender neutral*. In short, only *where the employer has fifteen or more employees* does the enactment under consideration cover offending sexual conduct in the workplace, *regardless* of the actor's or the victim's gender.

## A

### THE STATUTORY CLAIM

 Work-related sexual discrimination is remediable *against an employer*[19] in an administrative proceeding brought *under the provisions of* 25 O.S.1991 §§ 1101 *et seq.* [Oklahoma's Anti–Discrimination Act].[20] The cited act defines an *employer* as a legal entity having *fifteen or more employees.*[21]

9. *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Korematsu v. U.S.*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

10. *J.E.B. v. Alabama ex rel. T.B.*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976).

11. *Caban v. Mohammed*, 441 U.S. 380, 391–92, 99 S.Ct. 1760, 1767–68, 60 L.Ed.2d 297 (1979); *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979); *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).

12. *Bernal v. Fainter*, 467 U.S. 216, 219, 104 S.Ct. 2312, 2315, 81 L.Ed.2d 175 (1984).

13. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

14. *See* the plurality opinion in *Parham, supra* note 11, 441 U.S. at 351, 99 S.Ct. at 1745, for a general discussion of the Fourteenth Amendment's equal protection clause's applicability to state legislation. *See also Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979).

15. *Ross v. Peters*, Okl., 846 P.2d 1107, 1117 (1993).

16. *See Great Am. Federal S. & L. Ass'n. v. Novotny*, 442 U.S. 366, 380–81, 99 S.Ct. 2345, 2353, 60 L.Ed.2d 957 (1979) (Powell, J., concurring).

17. *Novotny, supra* note 16, 442 U.S. at 385, 99 S.Ct. at 2355 (Stevens, J., concurring).

18. For the pertinent terms of 25 O.S.1991 § 1302, see *supra* note 4.

19. The legislative exclusion of employers engaging less than fifteen persons from liability under the administrative remedy created by 25 O.S. 1991 §§ 1101 *et seq.* makes that statutory regime unavailable against the small shop's individual employees. For a general discussion of individual employee liability for sexual harassment claims, see Moberly and Miles, *The Impact of the Civil Rights Act of 1991 on Individual Title VII Liability*, 18 Okla.City U.L.Rev. 475 (1993).

20. The administrative remedy prescribed by the provisions of 25 O.S.1991 §§ 1101 *et seq.* targets solely the *employer* with fifteen or more employees. *See supra* note 5 for the Act's definition of "employer".

21. For the pertinent terms of 25 O.S.1991 § 1301(1), see *supra* note 5.

The plaintiff may not successfully pierce this Act's validity by attacking[22] the statutorily set numerical minimum as offensive to OKL. CONST. art. 5, § 46.[23] The invoked constitutional provision interdicts only impermissible *procedural*[24] disparateness.[25] It does not strike at the legislative power to classify persons or things for dissimilar *substantive-law* treatment.[26] Since Brown's sexual harassment claim does *not* fall within the statute's criteria for actionability—*her workplace having less than fifteen employees*—she is not shielded by any legislatively articulated public policy protection. We need *not* speculate *today* on whether a discharge in culmination of work-related sexual harassment created by a hostile work environment[27] might be remediable, at common law, under the rubric of a public policy breach within the meaning of this court's pronouncement in *Burk v. K–Mart Corporation.*[28]

**22.** Plaintiff argues that denying her state-law claim (for lack of the requisite number of employees in her workplace) would impermissibly sanction "disparate remedies" for similarly-situated employees claiming sexual harassment.

**23.** The pertinent provisions of Okl. Const. art. 5, § 46 are:
> "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ...:
> * * * * * *
> Regulating the practice or jurisdiction of ... in judicial proceedings or inquiry before the courts ... or other tribunals."

**24.** *Procedural*-law issues are those which affect *only the remedy* but *not* the substantive right. *Trinity Broadcasting Corp. v. Leeco Oil Co.,* Okl., 692 P.2d 1364, 1367 (1984).

**25.** *Simpson v. Dixon,* Okl., 853 P.2d 176, 183 (1993); *Johnson v. District Court of Oklahoma County,* Okl., 738 P.2d 151, 154 (1987) (Opala, J., concurring).

**26.** *Ross, supra* note 15 at 1117.

**27.** Hostile work environment occurs when sexual conduct has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). *See also Harris v. Forklift Systems, Inc.,* —— U.S. ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

## B

### THE COMMON–LAW CLAIM

 As we understand the *fourth* question, it calls upon us to answer the following: Is a discharge in culmination of (or connection with) work-related or on-the-job sexual harassment in breach of public policy and hence *actionable* under the *Burk*[29] exception?

The plaintiff presses us for a sweeping pronouncement which would hold that because the workplace discrimination provisions of Oklahoma's Anti–Discrimination Act declare an across-the-board public policy exception to the at-will employment doctrine,[30] her termination should be deemed actionable against the Firm as a common-law tort.

 The body of our common law, which serves to *supplement* the corpus of statutory enactments, is powerless to *abrogate* the latter, either in whole or *in part.*[31]

**28.** Okl., 770 P.2d 24, 28 (1989).

**29.** *Burk, supra* note 28 at 28.

**30.** While Oklahoma jurisprudence continues to adhere to the American *employment-at-will* doctrine, it recognizes a narrow exception. A discharge of an at-will employee is actionable, if it is shown to be contrary to a clear mandate of public policy that is articulated by constitutional, statutory or decisional law. *See Burk, supra* note 28 at 28, and its progeny.

**31.** Case law must always bow to the legislature's declared will that does not contravene the fundamental law of the State. *Schaeffer v. Shaeffer,* Okl., 743 P.2d 1038, 1039 (1987); *State Mut. Life Ass. Co. v. Hampton,* Okl., 696 P.2d 1027, 1036 (1985) (Opala, J., concurring); *Vilella v. Sabine, Inc.,* Okl., 652 P.2d 759, 762 (1982); *Chapman v. Parr,* Okl., 521 P.2d 799, 803–04 (1974); *Staples v. Baty,* Okl., 242 P.2d 705, 706 (1952); *Ewing v. Cadwell,* 121 Okl. 115, 247 P. 665, 666 (1926); *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 496 (1905).

> *See also* the provisions of 12 O.S.1991 § 2 which mandate that *the common law shall remain in full force unless modified by statute.* The relevant terms of § 2 are:
> "The common law, as modified by constitutional and *statutory law,* judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma...." [Emphasis added.]

Validly expressed legislative will must *always control* over contrary notions of the unwritten law.[32] When in *pari materia, statutory law* and the precepts of *either pre-existing or after-declared* common law are to be construed together as one consistent and harmonious whole. Once an interaction of the two sources has been measured by these principles, it is clear that even if Oklahoma's common law did recognize a discharge in culmination of work-related (or on-the-job) sexual harassment[33] as a *Burk* tort—a question which need not be answered today—Brown's common-law claim would not be actionable as a discharge in breach of public policy because her employer, who engaged *fewer than fifteen employees*, is outside the Act's purview.

As stated earlier in this opinion, we will not pause to consider today whether the *Burk* exception may generally be invoked to press a claim for wrongful discharge in culmination of work-related (or on-the-job) sexual harassment by "hostile work environment" *against an employer who is subject to statutory anti-discrimination remedies.*

## IV

## SINCE OKLAHOMA'S COMMON LAW AFFORDS BROWN A REMEDY UNDER THE GENERAL RUBRIC OF ASSAULT AND BATTERY,[34] IT IS NOT NECESSARY TO REACH THE ISSUE WHETHER A PRIVATE TORT MAY BE RESTED UPON VIOLATION OF A CRIMINAL STATUTE

 The tort of assault and battery need not be predicated on, or implied in, a criminal statute[35] [*e.g.,* sexual battery—21 O.S.1991 § 1123(B)[36]]. It enjoys an independent existence as a common-law cause of

**32.** The body of England's customary or common law was known in the middle ages as that kingdom's "unwritten law"—*Regni Angliae lex non scripta*. *McCormack v. Oklahoma Publishing Co.*, Okl., 613 P.2d 737, 740 (1980); *Mueggenborg v. Walling*, Okl., 836 P.2d 112, 115 (1992) (Opala, C.J., concurring).

**33.** A federal-law claim for sexual harassment was first established in *Meritor, supra* note 27, 477 U.S. at 57, 106 S.Ct. at 2399. It arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.* A state-law administrative remedy for sexual harassment was created by the enactment of 25 O.S.1991 § 1302(A), effective in 1985.

*Meritor*, the seminal case for sexual harassment claims based on Title VII of the Civil Rights Act of 1964, teaches that, within the meaning of federal employment law, two forms of sexual discrimination are remediable:
(1) harassment that involves the conditioning of employment benefits on sexual favors, known as *quid pro quo* harassment; and
(2) harassment that, while not affecting economic benefits, creates a hostile or offensive working environment, called "abusive work environment" harassment. 477 U.S. at 62–63, 106 S.Ct. at 2403.

**34.** For a general discussion of the common-law tort of assault and battery, see RESTATEMENT (SECOND) OF TORTS §§ 13 *et seq.*

The RESTATEMENT (SECOND) OF TORTS § 13 defines *battery* as:
"Battery: Harmful Contact

An actor is subject to liability to another for battery if
(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) a harmful contact with the person of the other directly or indirectly results."
The RESTATEMENT (SECOND) OF TORTS § 21 defines *assault* as:
"Assault
(1) An actor is subject to liability to another for assault if
(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) the other is thereby put in such imminent apprehension.
(2) An action which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for an apprehension caused thereby although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm."

**35.** Contrary to the contention advanced in Brown's briefs, *not all crimes* translate automatically into torts. *See Cooper v. Parker–Hughey*, M.D., Okl., 894 P.2d 1096, 1099 (1995), where the felony of perjury was held not to have a civilly remediable counterpart. *See also Briscoe v. LaHue*, 460 U.S. 325, 331–32, 103 S.Ct. 1108, 1113, 75 L.Ed.2d 96 (1983).

**36.** For the pertinent terms of 21 O.S.1991 § 1123(B), see *supra* note 1.

action *ex delicto* [37] (regardless of the victim's gender and of the motivation for the offensive conduct). It affords the plaintiff a tort claim against Ford, as the alleged actor, but not necessarily *qua* employer. Brown's common-law tort claim may be pressed regardless of her status as an employee of the Firm and her gender is entirely immaterial. The delict's sexual aspects, which do not constitute the gravamen of harm remediable by the civil action of assault or battery, are merely *evidentiary and explanatory* of the actor's offending conduct.

 For Brown to state an assault or battery cause of action *against her employer*—the Firm—the tort must be shown to have occurred in the course of Ford's employment and the evidence must meet the standards, recently reiterated in *Rodebush v. Oklahoma Nursing Homes, Ltd.,*[38] which control the employer's tort-related respondeat superior liability. If the employee's offending conduct may be viewed as *willful*, an employer *cannot be* held *vicariously liable* unless its employee's act is found to have been "incidental to and in furtherance of" its business.[39]

## V

### SUMMARY

Our answers require that the *liability posture* of each of the two defendants in the case—*the Firm* and *Ford*—be considered separately. A *common-law* claim against an employee/actor, who sexually intrudes upon a co-employee's freedom from offensive bodily contact and then discharges her (as employer's agent), is to be distinguished from the *statutory* administrative remedy for on-the-job discrimination available *solely* against the actor's employer.[40] A *statutory* workplace discrimination claim for sexual harassment is cognizable *only* against those who engage fifteen or more employees.

Because the common-law tort of assault and battery affords a *complete* remedy (with a full recovery range) for *wrongful* intrusions by sexual advances, we need not address today whether a criminal statute [21 O.S.1991 § 1123(B) ],[41] pressed by Brown as a basis for her private tort action, could be invoked for civil vindication of "sexual battery". It is sufficient to say that ample redress is available to Brown through the ancient common-law tort of assault and battery. The *vicarious* tort liability of the actor's employer is controlled by the teachings recently restated in *Rodebush.*

CERTIFIED QUESTIONS ANSWERED.

HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and SIMMS and WATT, JJ., dissent.

**37.** See *Thomas v. Casford,* Okl., 363 P.2d 856, 858 (1961); *Keel v. Hainline,* Okl., 331 P.2d 397, 399 (1958); *Stockwell v. Gee,* 121 Okl. 207, 249 P. 389, 390 (1926), for recognition of the common-law tort of assault and battery.

**38.** *Rodebush v. Oklahoma Nursing Homes, Ltd.,* Okl., 867 P.2d 1241 (1993). *See Mistletoe Express Service v. Culp,* Okl., 353 P.2d 9, 16 (1960). For an analysis of *Rodebush,* see Note, *RODEBUSH: Finding the Road to Strict Liability for the Intentional Torts of Employees,* 30 TULSA L.J. 375 (1994).

**39.** *Rodebush, supra* note 38 at 1245.

**40.** Since in this case Brown's employer—the Firm—is not subject to administrative liability because it has fewer than fifteen employees, we express no opinion about the kind or quantum of proof required by statutory law to impose vicarious responsibility on an employer for an employee's work-related (or on-the-job) sexual harassment.

**41.** For this statute's pertinent terms, see *supra* note 1.