2002 OK 34

**BITUMINOUS CASUALTY CORP., Plaintiff,**

v.

**COWEN CONSTRUCTION, INC., and Hospital Casualty Company, Defendants.**

No. 95,971.

Supreme Court of Oklahoma.

April 30, 2002.

Rehearing Denied Sept. 10, 2002.

Robert N. Naifeh, Jr. of Derryberry, Quigley, Solomon, Blankenship & Naifeh, Oklahoma City, OK, for the plaintiff.

Alan Wayne Gentges of Scott & Gentges, Tulsa, OK, for the defendant, Cowen Construction, Inc.

Michael J. Heron, Mary Beth Hanan and Patrick R.B. Sherry of Johnson Hanan & Heron, Oklahoma City, OK, for the defendant, Hospital Casualty Co.

1. Today's answers are limited to construction of the specific language of the policy or policies at issue in the federal declaratory-relief action pending before the certifying court. The relevant policy provisions are as follows:

    1. Insuring Agreement.
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.....
    * * *
    b. This insurance applies to "bodily injury" and "property damage" only if:
    * * *
    (2) The "bodily injury" or "property damage" occurs during the policy period.
    2. Exclusions.
    This insurance does not apply to:
    a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured....
    * * *
    f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
    (a) At or from any premises, site or location which is or was at the time owned or occupied by, or rented or loaned to, any insured;
    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on

LAVENDER, J.

¶ 1 Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq., the United States District Court for the Northern District of Oklahoma certified the following questions:

1. Under Oklahoma law, what is the proper "trigger of coverage" theory to determine the applicability of a commercial general liability policy [1] to injuries allegedly caused by lead poisoning?

2. Under Oklahoma law, is the scope of the total pollution exclusion of a com-

any insured's behalf are performing operations:
    (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;
    or
    (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.
    * * *
    SECTION V DEFINITIONS.
    * * *
    3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
    * * *
    9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
    ENDORSEMENT
    POLLUTION EXCLUSION
    It is agreed that the exclusion relating to the actual, alleged or threatened discharge, dispersal, release or escape of pollutants is replaced by the following:
    (1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
    (2) Any loss, cost or expense arising out of any governmental direction or request that the **named insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
    Subparagraph (1) above does not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.
    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

mercial general liability policy limited to "environmental pollution?"

¶ 2 Since the language used in the insurance contract (in issue) is in itself *clear and unambiguous* insofar as it addresses coverage for "property damage" and "bodily injuries" occasioned by "pollutants," it will be given its plain and ordinary meaning. The second certified question is answered in the negative. Because our response to the second query disposes of the case, we decline to answer the first certified question. The Court will answer only those certified questions which are "determinative" of a cause.[2] When, as here, the provided answer resolves the case, any additional response would necessarily be given in the abstract[3] and, hence, will not be offered.

# I

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶ 3 St. John Medical Center [hospital] contracted with Cowen Construction, Inc.[Cowen] to build a kidney dialysis center in Tulsa, Oklahoma. Cowen completed the contracted-for dialysis center in November 1993. In October 1996 eight patients[4]—who had received dialysis treatments at the center—

were diagnosed as suffering from lead poisoning and associated illnesses. Tests revealed that the B-bath unit of the dialysis center was contaminated with lead.[5]

¶ 4 Patients who were treated in the contaminated dialysis unit and suffered lead poisoning brought actions in the District Court of Tulsa County, State of Oklahoma, against hospital [and others] for damages related to their injuries. *Cowen was not directly sued in these actions.* Nonetheless, in one of the state-court actions[6] hospital brought a third-party petition against Cowen alleging that it had negligently constructed the venting system[7] for the B-bath dialysis unit resulting in its contamination. *Hospital's third-party petition is based upon theories of negligence, breach of warranty in the unit's construction and breach of contract.*[8]

¶ 5 During periods relevant to the dialysis unit's construction and the patient/plaintiffs' claims Cowen purchased Commercial General Liability ["GCL"] insurance policies from Bituminous Casualty Corporation [Bituminous] [for three policy periods beginning June 15, 1991 and ending May 1, 1994], from CNA Insurance Company [CNA] [for policy periods from 1994 to 1996], and from United States Fidelity Insurance and Guaranty Company [USF & G] [from 1996 until the present.]

---

chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. *See* 20 O.S.1991 § 1602, whose pertinent terms provide:
   The Supreme Court ... may answer questions certified to it ... when requested by the certifying court if there are involved in the proceeding before it questions of law of this state *which may be determinative of the cause then pending in the certifying court* .... [Emphasis added.]

3. *See Atlantic Richfield Co. v. Tomlinson,* 1993 OK 106, 859 P.2d 1088, 1094. We note that other courts have declined to answer certified questions which are not determinative of the cause before the certifying court. *See Greene v. Massey,* 384 So.2d 24 (Fla.1980)(declined to answer certified question because Court's response would not be determinative of the cause); *Grant Creek Water Works, Ltd. v. Commissioner of Int. Rev.,* 235 Mont. 1, 775 P.2d 684 (1988)(answering issue presented would not control outcome of litigation).

4. The record indicates that four of the patient/plaintiffs began their initial dialysis treat-

ment *before* May 1, 1994 while four others started *after* that date.

5. None of the parties in today's case dispute that lead is a *pollutant.*

6. *See Gayenell Woodbridge v. St. John Medical Center, Inc.,* Case No. CJ–98–3032, in the District Court of Tulsa County, State of Oklahoma.

7. It is alleged that Cowen failed to install a goose-necked vent pipe from B-bath and that lead flashing placed in the installed straight vent pipe allowed steam from the bath to interact with the flashing resulting in lead percolating back into the affected dialysis unit.

8. In answering the second certified question the Court *does not address* whether the insurance coverage issued by Bituminous to Cowen extends to the *repair* of construction defects, if any, in the dialysis unit built by the insured. That issue's resolution is left to the certifying court. Today's answer only addresses coverage for damages occasioned by the pollutants themselves. It does not address coverage for property damage

¶ 6 In February 2000 Hospital Casualty Company [HCC], hospital's insurer, placed Bituminous and CNA on notice that it would seek indemnity from them *if* it had to pay—on hospital's behalf—for the patient/plaintiffs' alleged injuries. [Only USF & G had agreed to defend Cowen against hospital's claims.] After receipt of HCC's notice Bituminous sought declaratory relief in the United States District Court for the Northern District of Oklahoma to determine whether it had any contractual obligation to either defend or indemnify Cowen in the third-party action.

## II

### THE COURT'S FUNCTION WHEN RESPONDING TO A CERTIFIED QUESTION FROM A FEDERAL COURT

¶ 7 Because the case from which the certified question emanates is not before us for resolution, we refrain (1) from applying the declared *state-law* response to the facts elicited in the federal-court litigation and (2) from passing upon the effect of federal procedure on the issues, facts and proof in the case. We have briefly outlined the case's factual underpinnings to place the certified questions in a proper perspective. It is for the United States District Court for the Northern District of Oklahoma to analyze our answer's impact on the case and facts ultimately before it.[9]

## III

### CERTIFIED QUESTION ANSWERED

¶ 8 The posited certified questions call for the Court to ascertain the meaning of certain terms found in general liability insurance policies/contracts[10] between Bituminous (insurer) and Cowen (insured). It is settled under Oklahoma's extant jurisprudence that ascertaining whether the terms of an insurance policy are ambiguous is for the Court to determine as a matter of law.[11]

¶ 9 Oklahoma's extant jurisprudence demarcates guidelines for ascribing meaning to an insurance policy's terms. Basically, an insurance policy is a contract. *When its terms are unambiguous and clear,* the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions.[12] In this process we are mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase.[13] The parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed.[14] The last principle of construction relevant to resolution of the dispositive certified question before the Court requires that a contract be construed as a whole, giving effect to each of its parts.[15] These rules are amplified by the provisions of 36 O.S.1991 § 3621 "Construction of Policies" which state:

> Every insurance contract shall be construed according to the entirety of its terms and conditions set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy.

caused by a contractor's failure to comply with building plans.

**9.** *Brown v. Ford,* 1995 OK 101, 905 P.2d 223, 226.

**10.** *See supra* note 1 for the pertinent contract terms.

**11.** *Kerr–McGee v. Admiral Insurance Co.,* 1995 OK 102, 905 P.2d 760, 762; *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, 812 P.2d 372, 376 (1991).

**12.** *Phillips v. Estate of Greenfield,* 1993 OK 110, 859 P.2d 1101, 1104. *See also* the terms of 15 O.S.1991 § 154, which provide:

> The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity.

**13.** *American Iron & Machine Works Co., Inc. v. Insurance Company of North America,* 1962 OK 197, 375 P.2d 873, 2nd syl.; *Torres v. Sentry Insurance,* 1976 OK 195, 558 P.2d 400, 401.

**14.** *Max True Plastering Co. v. U.S. Fidelity & Guaranty Co.,* 1996 OK 28, 912 P.2d 861, 869.

**15.** 15 O.S.1991 § 157, whose pertinent terms provide:

> The whole of a contract is to be taken together, . so as to give effect to every part, if reasonably

¶ 10 We begin by noting that today's case does not mark the first time the Court has considered the scope of a "pollution exclusion clause" in a comprehensive GCL insurance policy. The Court in *Kerr–McGee Corp. v. Admiral Ins. Co.*[16] reviewed a similar policy exclusion and held that it was unambiguous. While we accept the certified question for answering because the wording of the insurance contract (in issue) is—although similar—different, we reach the same conclusion as the earlier Court did.

■ ¶ 11 The primary focus of our analysis is construction of the following *exclusion-from-coverage* found in a special endorsement to the Bituminous/Cowen GCL policy:

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.[17]

Bituminous would have the Court declare that the special endorsement's terms are unambiguous and limit the scope of covered harm—i.e, there is no coverage for damage occasioned by pollutants.[18] The insured asks the Court (1) to find that the above-quoted policy language is ambiguous and (2) to construe the "pollution exclusion" endorsement to "mean pollution in the traditional environmental sense and for which the insured would have expected to exclude its products incorporated into its work." It is Cowen's claim that the word "pollutant" as used in the GCL policy is "unclear."

■ ¶ 12 The Court is required in its construction of the policy's terms to give effect to the entire contract. Our review discloses no observable ambiguity in the exclusion's language found on the insurance policy's face. Giving the language used in the pollution-exclusion clause—as stated in the special endorsement—its plain and ordinary meaning evinces an exclusion of coverage for bodily injury or property damage caused by a pollutant's release. Nowhere in the policy's lexicon is there language employed which would sustain finding—as suggested by the insured—the pollution exclusion clause only excluded from coverage that bodily injury and/or property damage which occurred when the general "environment" was damaged by the insured's acts. An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity.[19]

¶ 13 The general import of the GCL insurance policy's original pollution-exclusion-clause—*see* policy paragraph "2. Exclusions (a) & (f)(1) a-d"[20]—can be read to support a finding that an "environmental" limitation exists as to the original pollution-exclusion provision's scope. The base policy's limitation is couched in geographic terms and refers to clean up, removal and response to the effects of pollutants denoting an environmental element. However, the original limitations were removed or superceded by the special endorsement's terms. If we were to impose upon the special endorsement's pollution-exclusion-provision the same meaning and scope as that of the original contract's term, the former would be rendered redundant and the negotiation for and inclusion of the special endorsement would become a vain and useless act.[21] The elimination of the language used in the original policy by way of

---

practicable, each clause helping to interpret the others.
*See also Kerr–McGee, supra* note 11 at 763.

16. *Supra* note 11. The Court's attention is drawn to this jurisprudence by the parties' briefs. However, it appears they focused on the Court's construction of the terms "sudden" and "accidental" without realizing that the *Kerr–McGee* holding would be untenable *sans* a determination that the entire "pollution exclusion" clause was unambiguous.

17. For the full text of both the policy's stipulated exclusions from coverage and the special endorsement which amends the same, see *supra* note 1.

18. For the policy's definition of pollutants, see *supra* note 1.

19. *Druggists' Mut. Fire Ins. Co. of Iowa v. Shaw,* 1935 OK 132, 41 P.2d 69, 70.

20. For the pertinent policy language see *supra* note 1.

21. There is nothing in the record or materials accompanying today's certified questions which would suggest that—as in *Morton Internat'l, Inc. v. General Accident Inc. Co. of Am.,* 134 N.J. 1, 629 A.2d 831, 852–53 (1993)—the special endorsement was but a clarification of earlier policy provisions.

the special endorsement is legally significant. The requirement that effect must be given to each part of the Bituminous/Cowen insurance contract (as amended by the special endorsement) compels today's construction of the contested term—i.e., that it does not contain an environmental limitation but rather excludes from coverage any property damage or bodily injury caused by the discharge or release of pollutants.[22]

■ ¶ 14 In light of the *clear and unambiguous* text employed in the special endorsement and the language replaced in the base policy by the addendum, the pollution-exclusion clause embodied in the special endorsement *excludes* coverage for property damage or bodily injury—regardless whether there was damage to the general environment—occasioned by pollutants (as that term is defined in the endorsement).[23]

## IV

## SUMMARY

¶ 15 The Court is aware that many jurisdictions have considered the issue encompassed in the certified question answered today and that there is a wide divergence of opinion as to how it should be resolved. In most of the jurisprudence suggested by the parties the issue came to the court construing the policy's terms in the context of extended litigation with well-defined records of the pollution-exclusion-clause's history before relevant state regulatory bodies. Such is not the context within which we have considered the contested policy's text today. The certified question in the federal declaratory action

presented to us is bare of any evidence of the parties' intent other than as embodied in the language used in the policy and further is devoid of any factual record relative to approval of the policy's language by the Oklahoma State Insurance Commissioner. Hence, we have considered the insurance provision in issue by analysis focused upon the language employed by the parties in their contract.

¶ 16 The utilized terminology in the Bituminous/Cowen GCL policy is straightforward and not fairly susceptible to multiple meanings. Hence, we have given the policy's language its plain and ordinary meaning. The exclusion (here in issue) was not made obscure by being hidden deep within the bowels of a long insurance contract but rather is clearly identified for what it is—a special endorsement changing the scope and language of an earlier contractual provision. The Wisconsin Supreme Court's admonition in *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis.2d 106, 596 N.W.2d 429, 441, is particularly relevant. There the court in construing a "pollution exclusion clause" observed: "Courts must not torture the policy language in order to 'create ambiguities where none exist.'" [quoting *Kaytes v. Imperial Casualty & Indem. Co.*, 1994 WL 780901 (E.D.Pa. 1994)] The contractual language identified in the certifying court's second query—i.e., the special endorsement's pollution-exclusion-clause—excludes from coverage all damage occasioned by the "discharge, dispersal, release or escape of pollutants" which causes "bodily injury" or "property damage." It is not limited in its scope to "environmental pollution."

---

22. "Pollutants" is defined in the special endorsement as follows:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. While the parties may differ in the future over whether something is a pollutant or not within this definition's scope, there is no disagreement (*in the case before the Court*) over whether *lead* is a pollutant within the policy's definition.

23. The Court understands that Cowen asserts that the endorsement in issue should be construed by application of the *reasonable person test*, adopted in *Max True Plastering supra* note

14. The insured's position misapplies the case's holding. The Court held in Max True Plastering that the *reasonable expectations doctrine* "may apply to the construction of *ambiguous* insurance contracts or to contracts containing exclusions which are masked by technical or obscure language or which are hidden in policy provisions." [Emphasis added.] *Id.* at 863. The criteria for the doctrine's application are not satisfied in the present case since the employed policy language is clear and unambiguous rather than masked in technical jargon and is set out in such a fashion that it would have been impossible for the insured to have missed it if the entire insurance policy were read.

**CERTIFIED QUESTIONS ANSWERED.**

¶ 17 HARGRAVE, C.J., HODGES, OPALA, BOUDREAU and WINCHESTER, JJ., concur.

¶ 18 KAUGER, J., concurs in part; dissents in part.

¶ 19 WATT, V.C.J. and SUMMERS, J., dissent.