**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MJH PROPERTIES LLC,

    Plaintiff - Appellant,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant - Appellee.

No. 20-6002
(D.C. No. 5:19-CV-00577-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.
_____

    MJH Properties, LLC ("MJH") sued its insurer, Westchester Surplus Lines

Insurance Company ("Westchester") in federal court, invoking diversity jurisdiction

under 28 U.S.C. § 1332. It sought damages for Westchester's refusal to defend MJH

in an underlying lawsuit brought in state court. In the underlying lawsuit, two

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

individuals sued MJH for spraying pesticides that allegedly caused them substantial bodily injury.

The district court granted Westchester's motion to dismiss MJH's breach of contract and bad faith claims. It determined that the incident in the underlying lawsuit fell under an express coverage exclusion in the policy, and Westchester therefore did not breach any duty to defend or act in good faith. MJH appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. **BACKGROUND**

### A. *Underlying Lawsuit*

The plaintiffs in the underlying lawsuit—also described as third-party claimants—alleged that on June 21, 2017, an MJH employee sprayed their work premises with pest control pesticides that released toxic chemicals and caused them substantial bodily injury. They contended that test samples of MJH's spray showed it contained Essentria IC3, piperonyl butoxide, and permethrins. They sued MJH for various claims, including negligence and vicarious liability.

### B. *Insurance Policy*

At the time of the underlying incident, MJH was covered by a general commercial liability policy from Westchester (the "Policy"). The Policy obligated Westchester to defend MJH against suits seeking damages due to "bodily injury" or "property damage," but disclaimed a duty to defend against suits "to which this insurance does not apply." App., Vol. I at 240. The Policy expressly excluded from

2

coverage "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time" (the "Total Pollution Exclusion"). *Id.* at 262. The Policy also expressly defined "pollutants."[1]

### C. *Instant Action*

MJH asked Westchester to defend it against the underlying lawsuit. Westchester refused, explaining in its insurance appraiser's letter that the Total Pollution Exclusion precluded coverage because the plaintiffs alleged that "pollutants" caused their injuries.

MJH sued Westchester, seeking damages for Westchester's refusal to defend under the Policy and alleging that Westchester had (1) breached the Policy by refusing to defend MJH in the underlying lawsuit and (2) acted in bad faith.[2] MJH also alleged that its employee did not use "pollutants," as defined in the Policy, because the pest control pesticides contained only Essentria, which consists of "40%

---

[1] The Policy defined "pollutants" as including "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." App., Vol. I at 254.

[2] MJH also sued Chubb North American Claims ("CNAC") in its original complaint but not in its amended complaint. MJH requested CNAC's dismissal in the joint status report, Dist. Ct. Doc. 20 at 2, and the district court dismissed CNAC, App., Vol. II at 15 n.1. MJH has not appealed CNAC's dismissal.

mineral oil, 37% wintergreen oil, 10% rosemary oil and 13% other ingredients." *Id.* at 185.

Westchester moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. It again argued that because MJH used pesticides that were "pollutants," the Total Pollution Exclusion applied. *Id.* at 195 ("[T]here was and is no coverage, no breach of the policy and no basis for a claim for bad faith.").

The district court granted the motion. First, it held that MJH failed to state a breach of contract claim because the petition in the underlying lawsuit showed that the Total Pollution Exclusion applied and Westchester thus had no duty to defend. Second, the court held that because Oklahoma law required "an insured [to] show that he is entitled to coverage to prevail on a bad-faith claim," MJH had "failed to state a bad-faith claim." App., Vol. II at 19 (quotations omitted).

MJH timely appealed.

## II. **DISCUSSION**

### A. *Standard of Review*

"We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of facts, taken as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

B. *Pertinent Oklahoma Law*

In this diversity suit brought in the U.S. District Court for the Western District of Oklahoma, the substantive law of the forum state of Oklahoma applies. *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1120 (10th Cir. 2016).

### 1. **Contract Law**

"Oklahoma contract law applies to this diversity action." *Automax Hyundai S., LLC v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013). Under Oklahoma law, an insurance policy is a contract and interpreted accordingly. *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla. 1996).[3] In the absence of ambiguous language, Oklahoma courts enforce an insurance contract's express terms and take the language's plain and ordinary meaning. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003). "The test for ambiguity is whether the language is susceptible to two interpretations on its face from the standpoint of a reasonably prudent lay person, not from that of a lawyer." *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004) (quotations and alterations omitted).

---

[3] Under Oklahoma law, "[t]he general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability." *Dodson v. St. Paul Ins. Co*, 812 P.2d 372, 377 (Okla. 1991). Exclusions are read serially, and each one "eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions." *Id*.

A liability insurance policy generally contains the insurer's two basic contractual duties to the insured: the duty to defend and the duty to indemnify. *First Bank of Turley*, 928 P.2d at 302-03. The insurer's duty to defend is "broader than[] the duty to indemnify" and applies "whenever [the insurer] ascertains the presence of facts that give rise to the potential of liability under the policy." *Id.* at 303 (emphasis omitted). This determination must be "measured by the facts that were known and knowable—by what the insurer knows or by what the insurer was capable of discovering itself—at the time the insured's request was tendered." *Id.* at 305 (emphasis omitted); *see Automax Hyundai*, 720 F.3d at 804 (explaining that under Oklahoma law, "[t]he duty to defend is triggered by the facts reasonably available at the time the defense is demanded").

## 2. Duty to Defend

Under Oklahoma law, "[t]he insurer's defense duty is determined on the basis of information gleaned from the [underlying suit's] petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded." *First Bank of Turley*, 928 P.2d at 303 (emphasis omitted). Although the insured bears the initial burden to request a defense, once the request is made, the insurer bears the burden to investigate the underlying facts and determine whether they trigger coverage. *Id.* at 304.[4] In determining whether an insured has

---

[4] "[W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances . . . ." *Newport v.*

6

stated a plausible claim for breach of a duty to defend, the court may consider, in addition to the breach complaint, the petition in the underlying action. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).[5]

In *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1035 (Okla. 2002), the Oklahoma Supreme Court upheld as "clear and unambiguous" a total pollution exclusion provision nearly identical to the one here.[6] Because the provision was not limited to environmental pollutants, the *Bituminous* court determined it

---

*USAA*, 11 P.3d 190, 195 (Okla. 2000) (quotations omitted). "Under Oklahoma law, an insurer's investigation need only be reasonable, not perfect." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1317 (10th Cir. 2019) (quotations and alterations omitted).

[5] To survive a motion to dismiss, the insured party must state a plausible claim showing the insurer's duty to defend. In evaluating a Rule 12(b)(6) motion to dismiss, we may consider the petition in the underlying case. *See Smith*, 561 F.3d at 1098 ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference[,] . . . [and] documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (quotations and citations omitted)). MJH's amended complaint references the underlying petition, which, under *First Bank of Turley*, is central to whether Westchester had a duty to defend. 928 P.2d at 303.

[6] In *Bituminous*, the total pollution exclusion provision exempted from coverage third-party actions for "[b]odily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." 55 P.3d at 1031 n.1. It defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.*

excluded the third-party claimant's lead poisoning claims against the insured from coverage. *Id.*[7]

### 3. **Good Faith**

Under Oklahoma law, "[a]n insurer has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quotations omitted). A plaintiff seeking damages for the insurer's alleged bad faith conduct must prove insurance coverage for its claim. *See id.* at 1093-94 (finding district court did not erroneously dismiss plaintiff's bad faith claim where plaintiff failed to show entitlement to insurance coverage); *Edens*, 834 F.3d at 1129 ("Under Oklahoma law, an insured must show that he is entitled to coverage to prevail on a bad-faith claim.").

### C. *Analysis*

Based on our review of relevant Oklahoma law, the terms of the Policy and Total Pollution Exclusion, and the petition in the underlying state court action, we affirm the district court's determination that MJH has failed to state a breach of contract or bad faith claim.

---

[7] Since the 1970s, courts have addressed "the extent to which pollution exclusions apply to preclude coverage in commercial general liability (CGL) policies." *Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 889 (10th Cir. 2014). Courts either (1) "apply the pollution exclusions as written because they find them clear and unmistakable" or (2) "narrow the exclusions to traditional environmental pollution." *Id.* (quotations omitted). Oklahoma falls into the first camp. *See Bituminous*, 55 P.3d at 1035.

First, the district court correctly dismissed the breach of contract claim because MJH failed to show that Westchester had a duty to defend under the Policy. The underlying lawsuit's petition alleged that MJH used Essentria IC3, piperonyl butoxide, and permethrins. *See* App., Vol. I at 283. MJH does not dispute on appeal that piperonyl butoxide and permethrins are "pollutants" as defined in the Policy. Aplt. Br. at 1, 8-9; *see* Aplt. Reply Br. at 1-2. Although the Oklahoma Supreme Court did not address these specific substances in *Bituminous*, it interpreted a nearly identical total pollution exclusion provision broadly to include non-environmental pollutants. 55 P.3d at 1035. As in *Bituminous*, we find no ambiguity here and conclude the district court did not err in determining that at least one of the underlying petition's three alleged substances is a "pollutant" within the defined term's plain and ordinary meaning. *See Pitco Prod. Co.*, 63 P.3d at 546.[8]

On appeal, MJH argues that its amended complaint (1) alleged that its employee used only Essentria IC3, which contains non-pollutant substances; (2) conflicts with the underlying petition; and (3) states a plausible claim. *See* Aplt. Br. at 1, 8-9. But under Oklahoma law, the underlying petition's alleged facts place the spraying incident squarely in the Policy's Total Pollution Exclusion provision. MJH has not alleged that "facts that were known and knowable" by Westchester gave rise

---

[8] The plain language of the Total Pollution Exclusion encompasses any "actual, *alleged*, or threatened . . . 'pollutants.'" App., Vol. I at 262 (emphasis added).

9

to potential liability under the Policy. *See First Bank of Turley*, 928 P.2d at 303, 305.[9]

    Second, the district court correctly dismissed MJH's bad faith claim. MJH has failed to show coverage under the Policy, which is necessary to prevail on a bad faith claim. *See Badillo*, 121 P.3d at 1093-94. On appeal, MJH argues that Westchester acted in bad faith by failing to defend, reasonably investigate, or properly consider the test results. *See* Aplt. Br. at 10-11. These arguments are unresponsive to the district court's proper determination that MJH's bad faith claim fails together with its breach of contract claim.

---

[9] The underlying petition stated that although the MJH employee "*initially* advised the Oklahoma Highway Patrol that he only used a spray known as Essentria IC3 in his spray canister to spray the Leased Premises," the Highway Patrol's test results "indicated that in addition to the Essentria IC3, the spray contained two additional toxic chemicals:  piperonyl butoxide (PBO) and permethrins." App., Vol. I at 283 (emphasis added).
    When Westchester denied coverage and a duty to defend, its appraiser's letter to MJH explained that it analyzed the Policy, the Total Pollution Exclusion, and the underlying petition. *Id.* at 292-93. The record does not show that MJH responded to the appraiser by identifying facts that Westchester knew or should have known concerning its duty to defend. In its federal lawsuit, MJH's sole support for its allegation that its employee used only Essentria was a one-page attachment from the Highway Patrol's report listing Essentria's ingredients. *See* Dist. Ct. Doc. 9-1 at 1. As the underlying petition alleged, this same report disclosed the test results showing that the spray included toxic chemicals. *See* App., Vol. I at 283.

## III.  **CONCLUSION**

We affirm the district court's grant of Westchester's motion to dismiss.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge